**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document Relates To:<br><br>***The City of Muscle Shoals, Ala., et al., v. 3M Company, Inc., et al.*, No. 2:24-cv-07479-RMG ("*Muscle Shoals*")**<br><br>***Colbert County, Ala., et al., v. 3M Company, Inc., et al.*, No. 2:24-cv-07480-RMG ("*Colbert County*")**<br><br>Filed Pursuant to CMO 2A and Text Orders Dkt. Nos. 6790, 7431 |

## PLAINTIFFS' REPLY TO 3M'S RESPONSE
## TO PLAINTIFFS' AMENDED MOTION TO REMAND

Glenn Murdock (MUR006)
2906 Canterbury Road
Birmingham, AL 35223
Mrdck7@aol.com

FRIEDMAN, DAZZIO & ZULANAS, P.C.
Jeff Friedman (FRI018)
Lee Patterson (PAT060)
Jay Friedman (FRI049)
Ethan Wright (WRI082)
3800 Corporate Woods Drive
Birmingham, AL 35242
jfriedman@friedman-lawyers.com
lpatterson@friedman-lawyers.com
jayfriedman@friedman-lawyers.com
ewright@friedman-lawyers.com


*Counsel for Plaintiffs*

**PLAINTIFFS' REPLY TO 3M'S RESPONSE
TO PLAINTIFFS' AMENDED MOTION TO REMAND[1]**

3M does not deny the distinctive nature of Plaintiffs' claims. As noted at the outset of Plaintiffs' Motion: "[T]hese cases are not about 3M's *manufacture* or *sale* of AFFF—or any PFAS-containing products for that matter. Rather, these cases are about 3M's *direct discharge* and *disposal* of PFAS-containing waste from its own manufacturing facility in violation of state permits and local ordinances." (Pls.' Mot., ECF No. 68, at 1.) Jurisdiction over these state-law claims depends on 3M meeting *both* the express statutory requirements for "federal officer removal" set out in 28 U.S.C. § 1442(a)(1) *and* the requirement for a substantive, federal law defense on the merits of the claims alleged (thereby injecting the necessary "federal question"). See *Mesa v. California*, 489 U.S. 121 (1988) (holding that, while satisfying the statutory requisites expressed in 1442(a) "overcome[s] the 'well-pleaded complaint' rule," as to state-law claims, Article III would still be implicated absent a federal law defense that is colorable as such in relation to the complained of conduct.) It is 3M's burden to meet both. It has met neither.

In addition, 3M long since waived its right to remove these cases. 3M nowhere denies that, from the outset of these cases, it had knowledge of the very facts it now pleads as a basis for removal. Instead, 3M's response to this threshold issue of waiver rests upon a single—patently incorrect—legal premise.[2]

---

[1]Depending on syntax, "these cases" sometimes are referred to as "this case." Due to the virtually identical nature of the two cases at issue, references to filings will be limited to those in No. 2:24-cv-07479.

[2]Given the grounds stated herein, and the ruling in *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), Plaintiffs' Motion to Remand is not based on any disclaimer.

I.  **The *Boyle* Defense Is Not a Colorable Defense to Plaintiffs' Claims**

    A.  3M Cannot Meet Boyle's "Reasonably Precise Specifications" Test

    3M cannot plausibly be suggesting to this Court that there remains in its possession any material evidence of specifications for MilSpec not produced by it to this same Court in *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2022 WL 4291357, at *8 (D.S.C. Sept. 16, 2022) ("*2022 MDL Ruling*").  3M had a full and fair opportunity to share with this Court all evidence on the matter. This Court exhaustively considered the entire body of evidence and affirmatively held "as a matter of law that the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *Id.* at *8.  And for that matter, CMO 3 further serves to extend the effect of that ruling to all pending and subsequent cases in this MDL.  3M cannot in good faith ask this Court to expend judicial resources on this issue again.

    The case of *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5835311 (N.D. Fla. 2020) is distinguishable. There was no determination in place *at the time of removal*, as there was here, that the product at issue failed the "reasonably precise specifications" test as a matter of law, and no mention of an order like CMO 3.  *Id.* at *2 (explaining that it was "worth noting" that the summary judgment in the other MDL case was not granted until *after* Plaintiffs' motion to remand was filed).  The propriety of remand is based on the record at the time of removal.  E.g., *Bey v. Norfolk S. Corp.*, 2006 WL 8446795, at *1, n. 1 (D.S.C. 2006).  3M also cites two cases from the Eastern District of Louisiana, but neither involved a prior, matter-of-law determination in an MDL, nor an order like CMO 3.

    Moreover, the Florida District Court applied the principle that a removing federal contractor need only "make a showing that his federal defense is not without foundation and made in good faith." *Earplug Prods. Liab. Litig.,* 2020 WL 5835311, at *2.  Given this Court's prior determination as a matter of law on an exhaustive record which 3M fully participated in

developing, that "good faith" test is not met here.

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2019 WL 2807266 (D.S.C. May 24, 2019) ("*2019 MDL Ruling*") also is cited by 3M. But in that case there was not the same basis to question the plausibility of 3M's allegations of reasonably precise specifications. There had been no previous adjudication of the issue in this MDL at that time. And, as was true in in the other cases and orders cited by 3M, this Court did not have occasion to consider how a removal can be sustained on a position that, at the time of the removal, already has been adjudicated as a matter of law against the same defendant in the same proceedings. Logically, it cannot be.

It was not until its *2022 MDL Ruling* that this Court undertook an exhaustive analysis of the available evidence and adjudicated the issue. That ruling is controlling here. And it deprives 3M's allegations of "plausibility" and "good faith" needed to give this Court jurisdiction.

B.  3M's "Continuing Use" Argument Fails in this Particular Case

With Boyle's specification test foreclosed, the only way 3M could remove this case is *if* it could plausibly allege that "the government continued to use [AFFF containing PFOS] after acquiring *full knowledge* of its defects and risks." See *2022 MDL Ruling*, at *4 (emphasis added). It cannot. Based on (1) this Court's prior findings on summary judgment against 3M, and (2) the indisputable facts of this case (reviewed in detail in Plaintiffs' Motion at 11-13), 3M cannot plausibly make such allegations in good faith here. In fact, it is impossible for it to do so.

Critically, again, these cases arise out of the direct discharge and disposal of PFOS and PFOA from 3M's own manufacturing processes, not from the subsequent use of the end product supplied to the military. Among the aforesaid findings and undisputed facts is the fact that 3M ceased manufacturing PFOS, PFOA, and AFFF over the course of 2000 and 2001, when the government was at "ground zero" in its knowledge of AFFF and PFAS. (Pls.' Mot., ECF No. 68,

3

at 11-13.)  Thus, any contamination of the River from the complained of activities had to come from PFAS manufactured well prior to the requisite "full knowledge" on the part of the government.  Any "continued use" of AFFF at military installations after this point is simply irrelevant to these cases.

3M cites *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76 (2d Cir. 2008), but there it was the military's *use* of *the product* supplied to it (Agent Orange) that gave rise to the complained of injuries (by military personnel).  And it was the same "use" (actually purchase) of that product by the military, after acquiring full knowledge of its risks, that the Second Circuit seized upon. *Id*. at 95 ("Thereafter, the government continued to contract with the defendants for purchase of the same and similar defoliating agents.")

But here, Plaintiffs' claims arise not from the use of the product supplied to the military, but from 3M's unilateral, unlawful waste disposal activities. Any discussion of ratification of *that* conduct would have to begin with knowledge of matters that 3M does not allege the government ever had.  Even so, the discussion would be short lived.  See, e.g., *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 348 (4th Cir. 2014) ("[N]o 'uniquely federal interest' warrants [*Boyle*] preemption when the federal government has little or no control over a contractor's conduct.");  *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016) ("[*Boyle*] defense only applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both").

C.   <u>3M's Attempt to Minimize the Standard for a Colorable Defense Highlights the Lack of Subject Matter Jurisdiction</u>

In its Response, 3M hedges against the weakness of its position by positing that it faces a "low bar" and that, ultimately, a defense "is colorable 'unless it is *immaterial* and made solely for the purpose of obtaining jurisdiction.'" (3M Resp., ECF No. 69, at 15-16) (citation omitted).)  This

argument serves to focus attention on the fact that 3M's lone defense *is* "immaterial" to Plaintiffs' particular, waste-disposal claims, depriving this Court of jurisdiction.

The federal contractor defense was specially crafted in *Boyle* as a defense against claims for injuries arising from *the use* of *the product* supplied by a contractor to the military, and specifically *design defects* in *that product*. And it remains such. See 53 A.L.R.5th 535 ("The Government-Contractor Defense to State Products-Liability Claims") (surveying cases). Accordingly, it is immaterial to the different claims in this case.

> The government contractor defense is a defense to some *products liability actions*. See *Boyle v. United Technologies* . . . . "If a defect is one inherent *in the product* or system that the government has approved, it will be covered by the defense. . . .
>
> Here, ***Plaintiffs do not assert that the Monsanto Defendants produced a flawed product***. Rather, they assert that the Monsanto Defendants produced, stored and disposed of their products in a shoddy manner that resulted in ***leaks and spills of hazardous substances***. This case is, therefore, ***inapposite*** to the Agent Orange cases cited by Defendants.

*Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1052-53 (S.D. Ill. 2009) (remanding for lack of a federal question to support subject matter jurisdiction) (emphasis added). See also, e.g., *Custer v. Cerro Flow Prods., Inc.*, 2009 WL 5033931, at *4 (S.D. Ill. 2009) (likewise remanding for lack of a federal question because "[t]he [*Boyle*] defense is a defense used in products liability actions" where the "defect is one inherent in the product" supplied to the government, whereas the defendants were sued for tortiously "releas[ing] hazardous substances into the affected area through spills, leaks, and improper disposal"); *Rucker v. Monsanto*, 2023 WL 3494716 (S.D. Ill. 2023) (remanding waste disposal claims for the same reason). Compare, e.g., *2022 MDL Ruling*, at *4 (retaining claims for "design defects" in "the product" supplied to the military); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) (applying the *Boyle* defense to claims by veterans arising from their use of Agent Orange, the product supplied to the military); *Raoul v. 3M Co.*, 111 F.4th 846, 847 (7th Cir. 2024) (court did not apply *Boyle* defense to waste disposal activities;

remand upheld after plaintiff removed a claim that might have implicated PFAS derived from the military's use of the product supplied to it, MilSpec).

3M's Response reflects the fact that the only federal law defense it asserts is the *Boyle* federal contractor defense and that subject matter jurisdiction in this Court depends on whether *that* defense is a colorable defense to Plaintiffs' claims. See *Mesa*, 489 U.S. 121; *State v. Ivory*, 906 F.2d 999 (4th Cir. 1990) (remanding for lack of a "colorable federal defense in order to satisfy the requirement of Article III" in relation to state traffic law violations). In relying only on the *Boyle* defense, 3M fails to assert a federal law defense that is colorable as such in relation to the state-law claims made here. That defense has no relationship to Plaintiffs' waste disposal claims. Like the waste disposal cases cited above, this case is due to be remanded for lack of subject matter jurisdiction.

## II.     3M Fails to Meet Its Burden as to the Requirements Expressed in the Statute

3M begins by discussing the first of two, often-collapsed, statutory elements expressed in § 1442(a)(1): that the defendant be "acting under [a federal] officer," and that the claim be one "for or relating to [an] act under color of [federal] office." These similar-sounding elements often turn on the same facts. The analysis in Plaintiffs' Motion shows 3M's failure to meet either. (See, e.g., Pls.' Mot, ECF No. 68, at 17) ("3M cannot show that the U.S. military exercised any level of control over 3M's waste disposal practices at 3M's Decatur facility.")

For that matter, the two cases 3M cites on page 10 of its Response merely highlight the distinctive nature of Plaintiffs' claims here. Both cases, in the words of one, involved "injuries arising from [the] equipment that [the defendant] manufactured for the government." *Sawyer v. Foster Wheeler*, 860 F.3d 249, 255 (4th Cir. 2017; *2019 MDL Ruling*. See also *Raoul v. Monsanto Co.*, 2023 WL 130525, at *1 (N.D. Ill. 2023) (referring to waste disposal claims and products

liability claims as "two distinct theories").[3]

As to the latter statutory element, 3M criticizes Plaintiffs' use of "nexus" and "causal nexus" terminology. But Plaintiffs simply use labels that the Fourth Circuit (and most courts) still use. Even as it attributed a "connected or associated with" meaning to the "for or relating to" element, the court in *Maryland v. 3M* referred to it as the "causal-nexus prong" and "the nexus element." See 130 F.4th at 389, 391, 393 (2025). See also, e.g., *Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 248 (4th Cir. 2021) (listing requirement of "government-directed conduct . . . causally related to the plaintiff's claims"); *Baltimore v. BP P.L.C.*, 31 F.4th 178, 228, 230 (4th Cir. 2022) (referring to the "causal-nexus prong" and the "nexus prong").[4]

Terminology aside, the fact remains that 3M's illegal "dumping" was not activity done under, or "relating to," any "authority" derived from its federal contract. Its violation of Alabama environmental law was not committed under the aegis of the federal government, or any federal "office." And 3M does not allege that it was.

The grouping of New Jersey District Court cases cited by 3M does not make for a compelling precedent. Two entailed the fact "that the injuries complained of may have resulted from activity DuPont engaged in at the federal government's instruction." See *Curiale v. A*

---

[3]3M cites the District Court's decision in *Raoul,* but it is weak support for 3M's position. The case involved other, plainly removable, claims arising from the use of the supplied product. And even within the group of waste disposal claims were plainly removable claims as to chemical wastes "released and disposed of . . . near [defendant's plant] at the direction of the government," *Id.* at *2. Only one of multiple claims need be removable. *Id.* at *3. Similarly, 3M's heavier reliance on *Sawyer v. Foster Wheeler LLC,* 860 F.3d 249 (4th Cir. 2017) is misplaced, as it also entailed the government inserting itself into the complained of activity. As the court explained, the statutory test was met because of the connection of "the plaintiffs' claims, which fault warnings that were not specified by the Navy, to the warnings that the Navy specified." *Id.* at 258. The present case is wholly different, of course.

[4]See also, e.g., *New Jersey Dep't of Env't Prot. v. E.I. Du Pont De Nemours & Co.*, 2020 WL 2611539, at *4 (D.N.J. 2020) (observing that the "requirement is often referred to as the 'nexus' or 'causation' requirement").

*Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. 2023); *Albritton v. A Clemente, Inc.*, 2023 WL 2447422 (D.N.J. Mar. 10, 2023). The others offer unconvincing and/or muddled analysis. See, e.g., *New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co.*, 2020 WL 2041382, at *3 (D.N.J. 2020) (brief conclusory analysis).

*Carter v. Monsanto* and the cases cited in the Motion at n. 9 serve to focus attention on the fundamental disconnect between a contractor's unilateral decision to engage in unlawful waste disposal practices and the contractor's "official authority" to fulfill a lawful contract. The same type of disconnect informed the Fourth Circuit decision in *Anne Arundel Cnty. v. BP*, 94 F.4th 343 (4th Cir. 2024), where the charged conduct concerned the nature of disclosures to the public about the effects of fossil fuels supplied to the government. The "require[d] connection 'between the charged conduct and asserted official authority'" was simply missing. *Id*. at 348.[5]

Critical to the Fourth Circuit was the fact that "the companies do not argue the federal government required them to market or describe their products in a certain way. We thus join the First, Second, Eighth, and D.C. Circuits in holding that allegations like those here do not support federal officer removal." 94 F.4th at 350.

The D.C. Circuit court opinion followed in *Anne Arundel* emphasized *the absence of* "*any allegation the [defendants] engaged in [the complained of conduct] at the behest of or in coordination with federal officers.*" See *D.C. v. Exxon Mobil Corp*., 89 F.4th 144, 156 (D.C. Cir. 2023) (remanding). Obviously, 3M does not allege that its acts unlawfully polluting the Tennessee River were done "at the behest of or in coordination with federal officers."

Moreover, the D.C. Circuit reasoned that it "need not resolve the exact bounds of th[e

---

[5]The same rationale governed the Fourth Circuit in *Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022). There, as here, the charged conduct simply was not committed by 3M under any "official authority."

connection or association] standard." *Id.* Its Potter Stewart-like bottom line was thus: **"[U]nder any reasonable interpretation, the [plaintiff's] suit is not 'for or relating to' actions taken by the Companies under color of federal office.**" *Id.* (emphasis added). And that is the bottom line here as well.

### III.    3M Waived Its Right to Remove Based on Its Federal Contractor Defense

Even if 3M could assert its federal contractor defense in this case, and could satisfy the elements expressed in 1442(a)(1), it long since waived its right to remove. 3M does not deny that it has known from the outset of the same facts it now pleads as the basis for that defense. But rather than remove this case at its outset based on that knowledge, 3M litigated extensively in state courts for two years.

Nor does 3M dispute the facts concerning the two-year history of litigation in these cases. And offers only scant resistance to the notion that these facts would be enough to constitute a waiver. Instead, what 3M rests upon—what permeates its argument from beginning to end—is an incorrect legal premise: that common law waiver is not based on a defendant's *right* to remove, but can only occur if the defendant has become *obligated* to remove under 28 U.S.C. § 1446.

A.    The Waiver Law Applicable to this Case

3M contends it was not *required* to remove until its receipt in July 2024 of what it contends was an "other paper" response by its RFA 52.[6] But regardless of what RFA 52 did or did not say, 3M did not have to wait on it.

_____

[6]Essentially, 3M claims that Plaintiffs response to RFA 52 admitted that the recovery sought would be affected by the presence of "any other PFAS molecule found" in the water, i.e., one "traceable" to MilSpec AFFF. But RFA 52 never said what 3M says it does. (And Plaintiffs never "obscured" anything about their claims.) Prior to the Fourth Circuit's recent ruling in *Maryland v 3M*, Plaintiffs repeatedly explained to the transferor court that their disclaimer meant that they sought only those remediation costs justified by the amount of PFAS in the water other than from AFFF. Plaintiffs simply answered honestly to a request to admit that they sought to recover the "entire" amount of those damages, even if there also happened to be some "other molecule" present.

3M has knowledge of its own manufacturing and disposal practices. It has always had knowledge of its own practices. Including knowledge of its own production of MilSpec in Decatur. These are the very practices it now pleads as the basis for its federal contractor defense. But instead of removing these cases when they were filed based on this knowledge (as it did nine other "materially identical" Decatur cases (the "*Cowart* cases")), 3M pursued a much different course here.[7]

In addition to the statutory 30-day windows for removal set by § 1446 in relation to the circumstances prescribed in that statute, the Fourth Circuit joins other federal courts in applying the common law doctrine of waiver to removals in circumstances not governed by the time frames in that statute. See, e.g., *Northrop Grumman Tech. Servs. v. DynCorp Int'l,* 865 F.3d 181, 188 (4th Cir. 2017), holding that "*[b]oth* the 30-day removal deadline *and* the waiver doctrine" required remand in a case with less litigation over a much shorter time (seven months) than here. And the fact that *City of Martinsville v. Express Scripts,* 2025 WL 1039624, at *1 (4th Cir. Apr. 8, 2025) (see Motion at 20-21) is unpublished does not remove its persuasive precedential value as decision of the Fourth Circuit. Nor deprive the published lower court opinion, *City of Martinsville v. Purdue Pharma*, 2024 WL 4218847, at *11 (W.D. Va. 2024), of its precedential value.

3M cannot dispute the innumerable cases, within and without the Fourth Circuit, affirming the applicability of the doctrine to "federal officer" and other removals. See Wright & Miller, 14B Federal Practice & Procedure § 3721 (2003), affirming general rule that a defendant may "waive the right to remove a case to a federal court by taking some substantial offensive or defensive

---

[7]Aside from the axiomatic nature of 3M's knowledge of its own practices, evidence of its knowledge is discussed in its Response at 5, n. 2 and accompanying text, and includes, for example, 1972 to 1999 correspondence from the Navy. As 3M admits, it was able to immediately remove the *Cowart* cases based on "evidence showing—*independently of any pleading or paper from Plaintiffs*—that it had produced MilSpec AFFF at the Decatur facility for the military." (3M Resp., ECF No. 69, at 30; see also Pls.' Mot., ECF No. 68, at 20-21, n. 11.)

action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal." And all or most have facts far less compelling than in this case. *Id.* at n. 99 (surveying cases). Among them being *Redman v. Javitch Block*, 2022 WL 17716772, at *1 (4th Cir. 2022), in which the Fourth Circuit found a "motion to dismiss particularly evident of th[e] intent" to litigate in state court as it "raised dispositive arguments [including] a res judicata argument." That is exactly what happened here. Plus a lot more.

B.  3M's Fundamental Reliance on an Erroneous Legal Premise Leaves It No Defense to Plaintiffs' Waiver Argument

3M's Response is based on a fundamentally incorrect understanding of the premise for common law waiver. 3M confuses the *obligation* to remove within the 30-day period under 28 U.S.C. 1446(b)(3) that would be triggered by an "other paper" and the *right* to remove that can pre-exist such a paper. 3M states the premise for its position—a premise reflected throughout its argument on the matter—at the outset of that argument:

> Under 28 U.S.C. § 1446, 3M's removal of these cases was unquestionably timely. A defendant's notice of removal is untimely *only* if filed more than 30 days after the defendant receives either an "initial pleading" (§ 1446(b)(1)) or an "other paper" (§ 1446(b)(3)) that discloses a basis for federal jurisdiction.

(3M Resp., ECF No. 68, at 27 (emphasis by 3M); see also id. at 28 ("[A] defendant is required to remove a case *only* once the plaintiff's pleadings or papers have revealed a basis for removal" (emphasis by 3M).)

But the common law waiver at issue is not about knowledge acquired from a 1446(b) "pleading" or "paper." It is about a waiver grounded in the fact that *3M from the outset had all the knowledge of its own practices needed to plead the very federal contractor defense it now pleads.* And thus the waiver here is grounded not in the fact that 3M was *required* to remove at the outset, but that it *could have* removed—had the *right* to remove—*two years and an extensive amount of state court litigation before it did.* In short, 3M's argument misunderstands the premise

11

for the common law waiver at issue.

To this very point is *Dietrich v. Boeing Co.,* 14 F.4th 1089, 1094 (9th Cir. 2021), quoted by 3M (seemingly unaware of the implications for its own argument) as holding that "'a defendant *may* remove before it *must* do so.'" (3M Resp., ECF No. 69, at 27 (emphasis added by 3M).)  And this in 3M's brief to the transferor court:

> Because a defendant may remove a case based on its own investigation even when that information has not been disclosed by the plaintiffs pleadings or papers, "a defendant may remove before it must do so."  *Dietrich* . . . . "***The moment a case becomes removable and the moment the 30-day removal clock [under 1446(b)] begins to run 'are not two sides of the same coin.'***" *Walker [v. Trailer Transit, Inc.]*, 727 F.3d [819,] 824 [(7th Cir.2013)].

(3M Resp., ECF No. 19, at 13, 17-18 (emphasis added).)  See also, e.g., *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 147 (2d Cir. 2014) ("Defendants are permitted to remove outside of [the 30-day periods prescribed by 1446] when the time limits of 28 U.S.C. § 1446(b) are not triggered.").  As the Ninth Circuit confirmed in *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), ***a defendant may "remove outside," i.e., before, "the two thirty-day periods [of 28 U.S.C. § 1446(b)] on the basis of its own information***."  See also *Franklin v. Mfrs. & Traders Tr. Co.*, 2018 WL 3478899, at *4 (S.D. W.Va. 2018) (quoting *Roth*).[8]

Perhaps the best example of 3M's misplaced faith in the cases it gathers is its "passim" citations to *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997), including especially for 3M's assertion that courts must consider what is "on the face" of the relevant pleading rather than the subjective knowledge of the defendant.  But *Lovern* concerned only the proper trigger for

---

[8]3M makes the corollary argument that common law waiver can only apply *after* a defendant's receipt of a pleading or "other paper" under 1446(b). But the cases cited do not say that.  And logically there would be no need for courts, as they have done, to assess the duration and extent of litigation extending months after the defendant could have removed if common law waiver only applied after a receipt of a pleading or paper under § 1446, since the statute's thirty-day time limit would preempt the need for such an assessment.

the demanding 30-day "must file" deadline under § 1446(b) that, as the court noted, only applies

when the ground for removal is "stated" on the face of a triggering pleading.  Not only was *Lovern*

not a common law waiver case, and thus did not address the issue of when a defendant *may* remove,

the court actually concluded with this cautionary note (not quoted in 3M's Response):

> [T]he extension of the removal period in the case where the initial pleading does
> not state the factual or legal bases for removal *should not be allowed to cover
> strategic delay interposed by a defendant in an effort to determine the state court's
> receptivity to his litigating position.*

*Id.* at 163 (referring to "strategic delay" relative to defendant's pre-existing knowledge, since the

circumstance described forecloses any "initial pleading" knowledge).[9]

3M argues that the disclaimer in Plaintiffs' complaints cast doubt on 3M's ability to remove

based on its federal contractor defense, excusing its decision not to remove sooner.  But legal

issues bearing on the viability of federal law defenses asserted in "federal officer" removals

commonly are *the* central issue tested in such removals.  Indeed, deciding the very legal issue upon

which 3M contends excused its delay in removing these cases—the effect of a disclaimer on a

federal contractor defense —has many been the responsibility of the removal court.  See, e.g.,

*Puerto Rico v. Express Scripts*, 119 F.4th 174 (1st Cir. 2024); *Jennings v. Bell Helicopter Textron*,

2012 WL 12883239 (S.D. Cal. 2012) (cataloguing cases). See also *Dahl v. R.J. Reynolds Tobacco*

*Co.*, 478 F.3d 965 (8th Cir. 2007).[10]

---

[9]In line with this warning, any reluctance to explore a defendant's subjective knowledge of a matter
like an opposing party' citizenship does not prevent recognition in this case of a defendant's
axiomatic knowledge of its own practices.  Nor of the import of 3M's immediate removals of the
nine "materially identical" *Cowart* cases.

[10]In *Dahl,* defendant R.J. Reynolds contested a claim of a statutory waiver under 1446(a) on the
ground that a legal issue bore on its right to remove under the federal officer removal statute.  As
*Dahl* was pending in the Eighth Circuit, that court upheld a federal-officer removal in a similar
case involving Philip Morris.  Subsequently, the Eighth Circuit held that Reynolds had waived its
right to remove because, unlike Philip Morris, it had chosen not to timely remove and test the legal
issue in federal court.

Moreover, choosing to remove and challenge the efficacy of a disclaimer in the removal court is the choice 3M itself has made many times. It made that choice in the *Cowart* cases. And in *Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024), and *Hayden v. 3M Co.*, 2015 WL 4730741 (E.D. La. 2015), and countless other still-pending cases. In fact, 3M could and did remove in *Maryland v. 3M,* itself, despite being faced with precisely the legal issue—the efficacy of a MilSpec disclaimer—it seeks to hide behind here.

C.   3M's Extensive, Two-Year Litigation in State Courts Amounted to a Waiver

3M's Response ends by suggesting that the litigation that spanned two years in this case was not enough to constitute a waiver. It first seeks to diminish 3M's Motion to Dismiss relative to the motion in *Northrup* on the ground that the latter entailed "dispositive issues." But the Motion to Dismiss here, and 3M's Supplement and Amendment thereto (involving 1,000's of pages of exhibits, several rounds of briefing and an extended hearing) raised substantial (mostly dispositive) issues of (i) subject matter jurisdiction, (ii) ripeness, (iii) venue, and (iv) cognizability of Plaintiffs' claims under Alabama tort law and law of damages. And in addition to the intent to litigate in state court thus evinced, 3M expressly insisted, repeatedly, that "exclusive jurisdiction" for this case was in a different state circuit court. (See, *e.g.*, Defs.' Joint Mot. Dismiss, ECF No. 7-2, at 1, 3, 11, 12, 17.)

When the Colbert County Circuit Court denied 3M's Motion to Dismiss, 3M doubled down with a mandamus petition to the Alabama Supreme Court. Eighteen petitions, briefs and motions were filed by seven parties in that proceeding alone. (See Corrected Evidentiary Submission, ECF No. 10-3(A)-(N).) Over the course of two years, the seven parties to these cases filed more than 500 motions, petitions, briefs, and other submissions in the state courts.

After the litigation in the Alabama Supreme Court, 3M vigorously litigated discovery issues in the Colbert County Circuit Court. After written briefs and a hearing, that state court

resolved various issues and set the framework for discovery. 3M then followed that framework for months, engaging in the intensive and voluminous written and oral discovery described in Plaintiffs' Motion. (Pls.' Mot., ECF No. 68, at 22.)

To borrow a term, 3M cannot "plausibly" suggest that all this is not "enough." And the cases it cites in support of that suggestion are entirely dissimilar to this one.[11]

A finding of waiver is particularly apt in this case given the complex and substantive issues raised by 3M and adjudicated by the state courts, the duration and arduousness of the litigation of these issues, the completion of voluminous written discovery and most fact witness depositions, and a marked investment of state judicial resources to learn this case and adjudicate these issues over the course of two years. 3M should not be allowed to "experiment[] with its case in state court[s]" and, not liking the results, "transfer it to the Federal court." See *Rosenthal v. Coates*, 148 U.S. 142, 147 (1893)).

## <u>Conclusion</u>

For each of the reasons stated, this case should be remanded to the Circuit Court of Colbert County, Alabama.

---

[11]See *Grubb v. Donegal Mut. Ins. Co*., 935 F.2d 57, 59 (4th Cir. 1991) (upholding a lower court's refusal to remand under a "clearly erroneous" standard when the defendant but completed a summary judgment hearing after agreeing mid-hearing to dismiss a diverse party); *Sayre Enters. v. Allstate Ins. Co.*, 448 F. Supp. 2d 733 (E.D. Va. 2006) (upholding a removal that was filed within a § 1446(b) 30-day window (the complaint showed diversity), prior to any litigation of an answer and other customary papers filed only one day before). Compare *Rice v. Regions Bank*, 2010 WL 11614152 (N.D. Ala. 2010) (discussing striking parallels to this case, including a mandamus "trip" to the Alabama Supreme Court on a motion to dismiss).

Respectfully submitted this 22nd day of August 2025,


*/s/ Glenn Murdock*                                    */s/ Jeff Friedman*
Glenn Murdock (MUR006)                          Jeff Friedman (FRI018)
Mrdck7@aol.com                                        jfriedman@friedman-lawyers.com
2906 Canterbury Road                               Lee Patterson (PAT060)
Birmingham, AL 35223                              lpatterson@friedman-lawyers.com
Tel: 205-253-3334                                      Jay Friedman (FRI049)
                                                              jayfriedman@friedman-lawyers.com
                                                              Ethan Wright (WRI082)
                                                              ewright@friedman-lawyers.com


                                                              **OF COUNSEL**:
                                                              FRIEDMAN, DAZZIO & ZULANAS, P.C.
                                                              3800 Corporate Woods Drive
                                                              Birmingham, AL 35242
                                                              Tel: 205-278-7000
                                                              Fax: 205-278-7001



                    ***Attorneys for Plaintiffs***




## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a copy of the foregoing was electronically filed using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.

                                                       */s/ Jeff Friedman*
                                                       OF COUNSEL