**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>This Document relates to:<br><br>*The City of Muscle Shoals, Ala., et al. v. 3M Company, Inc., et al.*, No. 2:24-cv-07479-RMG<br><br>*Colbert County, Ala., et al. v. 3M Company, Inc., et al.*, No: 2:24-cv-07480-RMG |

## DEFENDANT 3M COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO REMAND

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ...........................................................................................................3

LEGAL STANDARDS ..................................................................................................6

ARGUMENT ................................................................................................................8

I.     The Court Has Federal Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1). ......................8

       A.     3M Acted Under Federal Officers In Manufacturing MilSpec AFFF. ................. 10

       B.     Plaintiffs' Claims Are Related To 3M's Manufacture Of MilSpec AFFF. .......... 11

       C.     3M Has Asserted A Colorable Federal Government Contractor Defense. ........... 15

              1.     The Court's Prior MDL Rulings Support 3M's Plausible Defense Based
                     On The MilSpec's "Reasonably Precise" Specifications........................ 18

              2.     3M Plausibly Pleaded Its Federal Defense Based On "Continuing Use." 21

II.    3M Timely Removed These Cases And Never Waived Its Right To Remove Them. .......26

       A.     3M Timely Removed These Cases Under 28 U.S.C. § 1446(b)(3). .................... 27

       B.     3M Did Not Waive Its Right To Remove These Cases. ........................................ 31

CONCLUSION..............................................................................................................35

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2020 WL 365617 (N.D. Fla. Jan. 22, 2020) ...........................................................................19

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2020 WL 5835311 (N.D. Fla. Oct. 1, 2020) ...........................................................................19

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  474 F. Supp. 3d 1231 (N.D. Fla. 2020)...................................................................................19

*In re AFFF Prods. Liab. Litig.*,
  2019 WL 2807266 (D.S.C. May 24, 2019)............................................................2, 9, 10, 18

*In re AFFF Prods. Liab. Litig.*,
  2022 WL 4291357 (D.S.C. Sept. 16, 2022)....................................................................*passim*

*In re Agent Orange Prod. Liab. Litig.*,
  100 F.R.D. 718 (E.D.N.Y. 1983) ............................................................................................25

*In re Agent Orange Prod. Liab. Litig.*,
  373 F. Supp. 2d 7 (E.D.N.Y. 2005) ........................................................................................25

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008).................................................................................................25, 26

*Akin v. Ashland Chem. Co.*,
  156 F.3d 1030 (10th Cir. 1998) ..............................................................................................31

*Akin v. Big Three Indus., Inc.*,
  851 F. Supp. 819 (E.D. Tex. 1994) .........................................................................................31

*Albritton v. A Clemente, Inc.*,
  2023 WL 2447422 (D.N.J. Mar. 10, 2023)..............................................................................14

*Anne Arundel County v. BP P.L.C.*,
  94 F.4th 343 (4th Cir. 2017) .............................................................................................14, 15

*Apostolic Pentecostal Church of Panama City Inc. v. Scottsdale Ins. Co.*,
  2021 WL 4147014 (N.D. Fla. Mar. 25, 2021) ........................................................................33

*Aqualon Co. v. Mac Equip., Inc.*,
  149 F.3d 262 (4th Cir. 1998) ..................................................................................................32

*Atkins v. AT&T Mobility Servs.*,
  2019 WL 5190971 (S.D.W. Va. Oct. 15, 2019) ................................................................29

*Ayo v. 3M Co.*,
  2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) .................................................................18

*Baker v. A. Clemente, Inc.*,
  2023 WL 3224586 (D.N.J. May 3, 2023) .........................................................................14

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ....................................................................................14, 23

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988)...........................................................................................9, 16, 26

*Carter v. Monsanto Co.*,
  635 F. Supp. 2d 479 (S.D.W. Va. 2009) ..........................................................................13

*City of Martinsville, Va. v. Express Scripts, Inc.*,
  2025 WL 1039624 (4th Cir. Apr. 8, 2025) .................................................................33, 35

*City of Martinsville, Va. v. Purdue Pharma, L.P.*,
  2024 WL 42198847 (W.D. Va. Sept. 16, 2024) ...............................................................35

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*,
  996 F.3d 243 (4th Cir. 2021) ............................................................................................7

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014)...........................................................................................16

*Curiale v. A Clemente, Inc.*,
  2023 WL 4362722 (D.N.J. July 5, 2023)...........................................................................14

*Custer v. Cerro Flow Prods. Inc.*,
  2009 WL 5033931 (S.D. Ill. Dec. 15, 2009)......................................................................14

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
  749 F.3d 137 (2d Cir. 2014).......................................................................................28, 33

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014)...........................................................................................................7

*Dietrich v. Boeing Co.*,
  14 F.4th 1089 (9th Cir. 2021) .................................................................................27, 28, 30

*Dowd v. Textron, Inc.*,
  792 F.2d 409 (4th Cir. 1986) ...........................................................................................22

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) .......................................................................8

*Franklin v. Mfrs. & Traders Tr. Co.*,
    2018 WL 3478899 (S.D.W. Va. July 19, 2018) ..........................................29

*Frey v. Minter*,
    829 F. App'x 432 (11th Cir. 2020) .............................................................33

*Graiser v. Visionworks of Am., Inc.*,
    819 F.3d 277 (6th Cir. 2016) .................................................................28, 33

*Grubb v. Donegal Mut. Ins. Co.*,
    935 F.2d 57 (4th Cir. 1991) ......................................................27, 31, 32, 35

*West Virginia ex rel. Hunt v. Caremark PCS Health, L.L.C.*,
    140 F.4th 188 (4th Cir. 2025) .............................................................. *passim*

*Hurley v. CBS Corp.*,
    648 F. App'x 299 (4th Cir. 2006) ...............................................................28

*Jamison v. Wiley*,
    14 F.3d 222 (4th Cir. 1994) .........................................................................20

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999) ................................................................................7, 12

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) .......................................................................13

*LeBlanc v. Huntington Ingalls Inc.*,
    2025 WL 1481961 (E.D. La. May 23, 2025) ..............................................19

*LeBoeuf v. Huntington Ingalls, Inc.*,
    2025 WL 1403139 (E.D. La. May 15, 2023) ..............................................20

*Lewis v. Babcock Indus.*,
    985 F.2d 83 (2d Cir. 1993) ..........................................................................26

*Lovern v. Gen. Motors Corp.*,
    121 F.3d 160 (4th Cir. 1997) .............................................................. *passim*

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) .............................................................. *passim*

*Mayor and City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ..................................................................14, 15

*McLaren v. UPS Store Inc.*,
    32 F.4th 232 (3d Cir. 2022) ...................................................................28, 33

*Moore v. Elec. Boat Co.*,
    25 F.4th 30 (1st Cir. 2022) .....................................................................16, 21

*Morgan v. Huntington Ingalls, Inc.*,
    879 F.3d 602 (5th Cir. 2018) ........................................................................8

*Mumfrey v. CVS Pharmacy, Inc.*,
    719 F.3d 392 (5th Cir. 2013) ......................................................................28

*N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*,
    2020 WL 2041382 (D.N.J. Apr. 28, 2020) .................................................14

*N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*,
    2020 WL 2611539 (D.N.J. May 22, 2020) ..................................................14

*Nessel v. Chemgaurd, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ..............................................18

*Northrop Grumman Tech. Serv., Inc. v. DynCorp Int'l LLC*,
    865 F.3d 186 (4th Cir. 2017) ..................................................................33, 34

*Orange Cnty. Water Dist. v. 3M Co.*,
    2022 WL 605630 (9th Cir. Mar. 1, 2022) ...................................................30

*Ramey v. Martin-Baker Aircraft Co.*,
    874 F.2d 946 (4th Cir. 1989) ......................................................................21

*Illinois ex rel. Raoul v. 3M Co.*,
    111 F.4th 846 (7th Cir. 2024) .......................................................................9

*Illinois ex rel. Raoul v. Monsanto Co.*,
    2023 WL 130525 (N.D. Ill. Jan. 9, 2023) .......................................10, 13, 14

*Redman v. Javitch Block, LLC*,
    2022 WL 17716772 (4th Cir. Dec. 15, 2022) .............................................32

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016) ........................................................................7

*Romulus v. CVS Pharmacy*,
    770 F.3d 67 (1st Cir. 2014) .....................................................................28, 33

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
    720 F.3d 1121 (9th Cir. 2013) .................................................................29, 33

*Rothner v. City of Chicago*,
   879 F.2d 1402 (7th Cir. 1989) ........................................................................31

*Rucker v. Monsanto Co.*,
   2023 WL 3494716 (S.D. Ill. May 17, 2023)....................................................14

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) ................................................................. *passim*

*Sayre Enters. v. Allstate Ins. Co.*,
   448 F. Supp. 2d 733 (E.D. Va. 2006) ..............................................................32

*Skidmore v. Norfolk S. Ry. Co.*,
   1 F.4th 206 (4th Cir. 2021) .......................................................................8, 28

*Walker v. Trailer Transit, Inc.*,
   727 F.3d 819 (7th Cir. 2013) ..........................................................................28

*Watson v. Philip Morris Co., Inc.*,
   551 U.S. 142 (2007)...........................................................................................7

*Willingham v. Morgan*,
   395 U.S. 402 (1969)............................................................................... *passim*

*Wolfe v. Wal-Mart Corp.*,
   133 F. Supp. 2d 889 (N.D.W. Va. 2001) .........................................................31

**Statutes**

28 U.S.C. § 1442(a)(1)................................................................................... *passim*

28 U.S.C. § 1446(a) ...............................................................................................7

28 U.S.C. § 1446(b) ..........................................................................................2, 8,

28 U.S.C. § 1446(b)(1) ......................................................................................8, 27

28 U.S.C. § 1446(b)(3) ................................................................................8, 26, 27

28 U.S.C. § 1446(c)(1)..........................................................................................30

Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545, 545...........................12

**Other Authorities**

H.R. Rep. No. 112-17 (2011)...................................................................................13

## INTRODUCTION

Defendant 3M Company ("3M") properly and timely removed the above-captioned cases based on federal officer jurisdiction, and the Court therefore should deny Plaintiffs' Amended Motion to Remand (ECF No. 7494) ("Motion").[1] Plaintiffs City of Muscle Shoals, Alabama and Colbert County, Alabama initially sued 3M in Alabama state court, alleging that per- and polyfluoroalkyl substances ("PFAS") purportedly released from a 3M manufacturing facility in Decatur, Alabama ("Decatur facility") contaminated Plaintiffs' water supply. 3M removed the cases to federal court under the federal officer removal statute—and the Judicial Panel on Multidistrict Litigation ("JPML") then transferred them to the MDL—because 3M manufactured PFAS-containing aqueous film-forming foam ("AFFF") at the Decatur facility for the U.S. military pursuant to military specifications ("MilSpec") that required AFFF to contain PFAS. That means the alleged PFAS contamination at issue in Plaintiffs' complaints plausibly derived at least in part from 3M's manufacture of MilSpec AFFF, and 3M can therefore remove the cases to federal court. The Court should deny Plaintiffs' amended remand motion.

Plaintiffs originally moved to remand because their complaints allegedly disclaim AFFF-related relief—but the Fourth Circuit recently rejected those arguments, holding that such disclaimers do not defeat federal jurisdiction when a defendant plausibly alleges that the claimed PFAS contamination stems in part from MilSpec AFFF sources. *See Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025). Plaintiffs' Amended Motion to Remand understandably abandons their disclaimer-based objections to federal jurisdiction, and 3M's removal of these cases unquestionably was proper. 3M plausibly alleged that that it manufactured MilSpec AFFF at the Decatur facility and even submitted uncontested evidence in support of those allegations. These

---

[1] Unless otherwise specified, "ECF No." references the MDL docket, No. 2:18-mn-02873.

cases thus relate to actions 3M took at the direction of federal officers in producing MilSpec AFFF, so these cases are removable because 3M has a colorable government contractor defense. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019).

With their primary remand argument scuttled by *Maryland*, Plaintiffs contend that their cases are unique because they arise from 3M's disposal practices at a facility where it manufactured AFFF (rather than from use of AFFF at military bases or airports), but that difference is immaterial. Plaintiffs incorrectly argue that these cases must have a "causal nexus" with 3M's conduct in manufacturing AFFF.  But that legal standard was superseded by congressional action in 2011.  3M simply must plausibly allege that the cases are "related to" 3M's conduct.  These cases relate to 3M's manufacture of MilSpec AFFF because they seek to recover for PFAS releases from a facility where 3M produced MilSpec AFFF, and the factfinder will need to determine the extent to which PFAS in Plaintiffs' water supply derived from manufacture of MilSpec AFFF. 3M also still has a colorable government contractor defense based on the connection between Plaintiffs' claims and PFAS from MilSpec AFFF. Plaintiffs argue that 3M may not assert its defense in these cases because the government allegedly did not know about AFFF's alleged risks when 3M was manufacturing AFFF at the Decatur facility. That is a merits question that has no bearing on removal, and it is inconsistent with this Court's determination that 3M's continued-use theory implicates "material factual disputes" that "the parties will have the opportunity at trial to litigate, and the jury to decide." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *12 (D.S.C. Sept. 16, 2022).

3M also did not waive its right to remove this case. The 30-day clock for 3M to timely remove this case under 28 U.S.C. § 1446(b) did not start to run (if it all) until Plaintiffs disclosed in their responses to requests for admission that, contrary to their purported disclaimers, they are

seeking to hold 3M liable for alleged PFAS contamination *even if* the PFAS are traceable to 3M's manufacture of AFFF. Plaintiffs argue that 3M waived its right to remove these cases by litigating them prior to removal, but Plaintiffs do not point to *any* action that 3M took *after* Plaintiffs' disclosure had triggered § 1446(b)'s removal clock by which 3M could have waived its right to remove these cases within 30 days of the disclosure. Instead, Plaintiffs argue that 3M waived its right to remove by engaging in state-court litigation *before* Plaintiffs triggered the removal clock. No legal authorities support Plaintiffs' position.

For those reasons, the Court should deny Plaintiffs' amended motion to remand these cases.

## BACKGROUND

In August 2022 and February 2023, respectively, Plaintiffs filed these actions in Alabama state court seeking to hold 3M and other defendants liable for the alleged contamination of their drinking water sources with PFAS—including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). Plaintiffs each allege that they "own and operate a water treatment facility that depends on the Tennessee River for providing drinking water to the public." Compl. ¶ 10, *Muscle Shoals*, No. 24-cv-07479, ECF No. 1-1 ("*Muscle Shoals* Compl."); Compl. ¶ 12, *Colbert County*, No. 24-cv-07480, ECF No. 1-1 ("*Colbert County* Compl."). Plaintiffs further allege that 3M and other Defendants "operat[e] manufacturing facilities related to PFCs [perfluorinated chemicals]" (*i.e.*, PFAS) that "are located upstream of [Plaintiffs'] water intake" in or near Decatur, Alabama. *Muscle Shoals* Compl. ¶ 11; *Colbert County* Compl. ¶ 13. Those facilities allegedly "discharge PFAS" into the Tennessee River and allegedly have contaminated Plaintiffs' drinking water supply. *Muscle Shoals* Compl. ¶ 19; *Colbert County* Compl. ¶ 21. The complaints allege that 3M manufactured PFOS and PFOA at its Decatur facility. *Muscle Shoals* Compl. ¶ 42; *Colbert County* Compl. ¶ 41. The complaints also allege that PFAS-containing

discharges from 3M's Decatur facility have polluted the Tennessee River. *Muscle Shoals* Compl. ¶ 19; *Colbert County* Compl. ¶ 22. Plaintiffs assert state-law tort claims against 3M to recover damages, including costs of monitoring for PFAS in their drinking water supply and of upgrades to their water treatment facilities that are allegedly needed to remove PFAS. *Muscle Shoals* Compl. ¶¶ 13-14; *Colbert County* Compl. ¶¶ 15-16. The complaints also allege that "Plaintiffs make no claim that the manufacture or use of fire fighting foam ('AFFF') in any way caused or contributed to their damages or the claims asserted in this lawsuit," and "expressly disclaim" that Plaintiffs suffered damages arising from or associated with AFFF. *See Muscle Shoals* Compl. ¶ 16; *Colbert County* Compl. ¶ 18.

On July 19, 2024, however, Plaintiffs served 3M with their Responses To 3M's First Set Of Requests For Admission (*Muscle Shoals*, No. 24-cv-07479, ECF No. 1-2; *Colbert County*, No. 24-cv-07480, ECF No. 1-2 ("RFA Resp.")). Although Plaintiffs professed to continue to disavow any AFFF-related relief (*see* RFA Resp. at p. 2), at the same time they expressly "*admitted*" that they seek recovery related at least in part to AFFF. RFA Resp. No. 52 (emphasis added). 3M's initial Request For Admission and Plaintiffs' admission read as follows:

> 52. Your position in the litigation is that you are entitled to recover the *entire* cost of removing PFAS from Your Drinking Water if any PFAS molecule found in Your Drinking Water is traceable to the manufacture, sale, disposal, or use of a non-AFFF product manufactured by 3M, *even if* any other PFAS molecule found in Your Drinking Water is traceable to the manufacture, sale, disposal, or use of AFFF manufactured by 3M.
>
> **RESPONSE: Plaintiffs object to this Request to the extent that it calls for a legal conclusion. Subject to and without waiving this objection, *this Request is admitted*.**

*Id.* (emphases added).

On August 5, 2024, 3M removed these cases to the U.S. District Court for the Northern District of Alabama under the federal officer removal statute. *See* Notice of Removal ¶¶ 1-4,

4

*Muscle Shoals*, No. 2:24-cv-07479, ECF No. 1 ("*Muscle Shoals* NOR"); Notice of Removal ¶¶ 1-

4, *Colbert County*, No. 2:24-cv-07480, ECF No. 1 ("*Colbert County* NOR"). 3M explained that

one significant PFAS-containing product that 3M manufactured at the Decatur facility was

MilSpec AFFF. *Muscle Shoals* NOR ¶ 24; *Colbert County* NOR ¶ 24.[2] 3M also submitted the

letters sent to 3M by the U.S. Navy, dating from 1972 to 1990, which showed that the Navy had

tested AFFF manufactured by 3M at the Decatur facility, and which confirmed that those AFFF

products qualified for placement on the military's Qualified Product List because they conformed

to MIL-F-24385, the MilSpec for AFFF. *Muscle Shoals* NOR Ex. B, No. 2:24-cv-07479, ECF No.

1-2; *Colbert County* NOR Ex. B, No. 2:24-cv-07480, ECF No. 1-2. At that time, the Navy's

MilSpec required AFFF to contain "fluorocarbon surfactants," a category of PFAS that includes

PFOA and PFOS. *Muscle Shoals* NOR ¶ 23; *Colbert County* NOR ¶ 23. 3M alleged that it was

entitled to remove these cases—in which Plaintiffs assert claims related to PFAS releases from the

Decatur facility that allegedly contaminated their water supply—because 3M was acting under a

federal officer in producing MilSpec AFFF at the Decatur facility, and 3M has a colorable

---

[2] In support of 3M's plausible allegations, the record evidence shows that, from at least 1989 to 2001, millions of pounds of Light Water (3M's brand name for AFFF) were shipped from the Decatur facility each year. *Muscle Shoals*, No. 2:24-cv-07479, ECF No. 19-1, at 3M_BELL02046789. *Over 15 million pounds* of AFFF were shipped from Decatur in 1991 alone. *Id.* The volumes of AFFF produced for the United States government were substantial. For instance, between September 4, 1992 and October 2, 1992, 3M was scaling up production to meet a "significant Government order" of "about 189M gallons" of AFFF. *Muscle Shoals*, No. 2:24-cv-07479, ECF No. 19-2. This production came from the same electro-chemical fluorination cells as other 3M PFAS-containing products, generating wastewater and wastewater sludge that was land applied on the Decatur facility site. Moreover, 3M routinely tested AFFF for quality assurance purposes at a dedicated on-site Fire Testing Area. Excess AFFF from this process was collected and routed to 3M's wastewater treatment system, again generating wastewater sludge that was land applied on the site. *Muscle Shoals*, No. 2:24-cv-07479, ECF No. 19-3, at p. 1. PFOS from MilSpec AFFF production cannot be distinguished from PFOS from other products made at the Decatur facility—so when Plaintiffs complain that 3M has caused PFOS to pollute the Tennessee River, they necessarily implicate PFOS from MilSpec AFFF production and testing.

government contractor defense for any PFAS resulting from its production of MilSpec AFFF. *See Muscle Shoals* NOR ¶¶ 18-25; *Colbert County* NOR ¶¶ 18-25. Plaintiffs moved for remand based, *inter alia*, on their disclaimer of AFFF-related relief. *Muscle Shoals*, No. 2:24-cv-07479, ECF Nos. 3, 4, 9, & 11; *Colbert County*, No. 2:24-cv-07480, ECF Nos. 3, 4, 9, & 11.

On December 12, 2024, the JPML transferred these cases to this Court as tag-along actions for coordination with the actions in the MDL. *See* JPML Transfer Order, ECF No. 6470. The order explained that earlier in 2024, the JPML had "transferred four Alabama actions that involved personal injury claims stemming from the alleged discharge of PFAS into the Tennessee River by 3M's manufacturing facility in Decatur, Alabama, upon being persuaded that 3M manufactured AFFF there," and for the same reason, *Muscle Shoals* and *Colbert County* "likewise will share common questions of fact with the AFFF actions in the MDL and will benefit from inclusion in the centralized proceedings." *Id*. at 1-2. The JPML reasoned that 3M presented evidence that "confirmed that AFFF manufactured at the Decatur Facility conformed to U.S. military specifications," so 3M had "demonstrated that AFFF is at issue in these actions." *Id*. at 2.

After transfer, Plaintiffs again moved to remand these cases based, *inter alia*, on their disclaimers. *Muscle Shoals*, No. 2:24-cv-07479, ECF No. 51; *Colbert County*, No. 2:24-cv-07480, ECF No. 46. This argument was rejected by the Fourth Circuit. *See Maryland*, 130 F.4th at 392, 393. Plaintiffs' present motion abandons the disclaimer arguments but continues to argue that 3M cannot meet the requirements of federal officer removal and that 3M waived its right of removal.

### LEGAL STANDARDS

Under the federal officer removal statute, a civil action may be removed to federal court if it is "against or directed to" "any person acting under [any] officer[] of the United States or of any agency thereof," and is "for or relating to any act under color of such office." 28 U.S.C.

§ 1442(a)(1). A private defendant thus may remove a case by showing that (1) "it acted under a federal officer"; (2) "the charged conduct was carried out for or in relation to the asserted official authority"; and (3) the defendant "has a colorable federal defense." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). Section 1442(a)(1) authorizes removal of the entire case even if only a portion of the case relates to the defendant's federal work. *See id.* at 257; *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 247-248, 252 n.8 (4th Cir. 2021).

The Supreme Court has held that § 1442(a)(1) is "liberally construed" in favor of removal, *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007), and "should not be frustrated by a narrow, grudging interpretation," *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Section 1442(a)(1) furthers the important Congressionally adopted policy of affording federal agents a "federal forum for a federal defense." *Sawyer*, 860 F.3d at 254. Therefore, the "ordinary 'presumption against removal' does not apply," *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251, and § 1442 "*mandates* a liberal construction," *West Virginia ex rel. Hunt v. Caremark PCS Health, L.L.C.*, 140 F.4th 188, 194 (4th Cir. 2025) (emphasis added). Moreover, § 1442(a)(1) is "an exception to the well-pleaded complaint rule." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016). Actions against federal agents "may be removed despite the nonfederal cast of the complaint" so long as "the defense depends on federal law." *Jefferson Cnty. v. Acker,* 527 U.S. 423, 431 (1999). Courts "must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Maryland*, 130 F.4th at 389.

As in other contexts, "a defendant's notice of removal need include only . . . *plausible* allegation[s]" supporting removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added); *see* 28 U.S.C. § 1446(a). Although the "[t]he removing party

bears the burden" of showing "that the actions belong in federal court," the party will "carry that burden" when its notice of removal contains a "'plausible allegation' that federal jurisdiction is proper." *Maryland*, 130 F.4th at 387; *accord Caremark PCS Health, L.L.C.*, 140 F.4th at 194.

A defendant must file its notice of removal within 30 days of service of either an "initial pleading" or some "other paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(1), (3). The 30-day deadlines under § 1446(b) do not begin to run until "the basis for removal jurisdiction becomes 'apparent within the four corners of the initial pleading or subsequent paper.'" *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 210 (4th Cir. 2021) (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)). Moreover, "where the timeliness of a federal officer's removal is at issue, [courts] extend section 1442's liberal interpretation to section 1446." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *accord Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 & n.10 (5th Cir. 2018).

## ARGUMENT

3M properly removed these cases under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), based on allegations that the claimed PFAS contamination of Plaintiffs' drinking water supply has derived at least in part from 3M's manufacture of MilSpec AFFF at the Decatur plant. 3M timely removed these cases because, at least until less than 30 days before 3M filed its Notice of Removal, Plaintiffs never had served 3M with a pleading or paper that triggered the 30-day removal periods of 28 U.S.C. § 1446(b) by putting 3M on notice that PFAS from MilSpec AFFF is at issue in these cases. The Court should deny Plaintiffs' Motion.

## I.     The Court Has Federal Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1).

3M's notices of removal plausibly alleged each element of federal officer jurisdiction: 3M "acted under a federal officer"; 3M "has a colorable federal defense," and "the charged conduct was carried out for or in relation to the asserted official authority." *See Sawyer*, 860 F.3d at 255

8

(internal quotation marks omitted); *Muscle Shoals* NOR ¶¶ 27-32, 41-48; *Colbert County* NOR ¶¶ 27-32, 41-48; *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). This Court has repeatedly held that, under the federal officer removal statute, AFFF manufacturers may remove PFAS lawsuits involving claims to recover for alleged harms from MilSpec AFFF. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2-3 (denying remand of *State of New York I*); Order 2-5, ECF No. 320 (D.S.C. Sept. 27, 2019) (denying remand of *State of New York II*); Order 2-6, ECF No. 325 (D.S.C. Oct. 1, 2019) (denying remand of *Ridgewood Water*); Order 2-5, ECF No. 2559 (D.S.C. Aug. 24, 2022) (denying remand of *Insurance Auto Auctions*). The Court should reach the same conclusion here.

Plaintiffs have *admitted* that they seek "the *entire* cost of removing PFAS from [their] Drinking Water . . . even if any . . . PFAS molecule found in [their] Drinking Water is traceable to the manufacture, sale, disposal, or use of AFFF manufactured by 3M." RFA Resp. No. 52 (emphasis added). Thus, these cases will at a minimum involve "challenging causation question[s]" about the extent to which PFAS in Plaintiffs' drinking water supply may have derived from 3M's manufacture of MilSpec AFFF at the Decatur facility, and "those are merits questions that belong in federal court." *Maryland*, 130 F.4th at 391-392; *cf. Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 847-48 (7th Cir. 2024) (affirming remand of State of Illinois' "non-AFFF" PFAS lawsuit *only* after Illinois "clearly and unequivocally conceded at oral argument that it would *not* seek relief against 3M for mixed PFAS contamination" because "[i]f even a morsel of contamination" is from MilSpec AFFF, "the State's recovery is barred.") (emphasis added).[3]

---

[3] 3M does not concede that a *Raoul*-style concession forecloses federal jurisdiction. Even if a plaintiff forswears relief where PFAS are commingled from various sources, the factfinder must still decide whether any given location has "even a morsel" of PFAS from MilSpec AFFF. *Raoul*, 111 F.4th at 849. That decision, like any other causation or apportionment decision, is a "merits

Plaintiffs make two arguments challenging federal officer jurisdiction. Both are meritless. First, Plaintiffs argue that 3M cannot show that these cases are related to 3M's manufacture of AFFF for the federal government because these cases concern 3M's purportedly improper conduct in releasing PFAS from its manufacturing facility rather than the design, supply, or use of MilSpec AFFF. But Plaintiffs' complaints and RFA responses reveal their intention to recover for PFAS releases from a facility where 3M indisputably manufactured PFAS-containing MilSpec AFFF, which is more than sufficiently "relat[ed] to" 3M's acts under federal authority for purposes of federal officer removal. *See e.g., Illinois ex rel. Raoul v. Monsanto Co.,* 2023 WL 130525 (N.D. Ill. Jan. 9, 2023). Plaintiffs also argue that, under this Court's order denying defendants' summary judgment on their government contractor defense (*In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357), 3M cannot assert a colorable federal defense. But any merits determinations relating to 3M's defense does not preclude 3M from asserting a *colorable* government contractor defense here and, in any event, the Court determined *can* continue to assert its defense in this MDL.

A. **3M Acted Under Federal Officers In Manufacturing MilSpec AFFF.**

Plaintiffs do not dispute that 3M qualifies as a "person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). Nor can they. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (defendant "acted under the Navy" in manufacturing products matching "military specifications provided by the Navy"); *accord In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2. The undisputed facts here show that 3M produced mission-critical AFFF for the military at its Decatur facility and that

---

question[] that belong[s] in federal court." *Maryland*, 130 F.4th at 392. Because Plaintiffs have not made that drastic concession, this case does not present the issue.

the AFFF conformed to a MilSpec that required use of PFAS (among other requirements). *See Muscle Shoals* NOR ¶¶ 27-29; *Colbert County* NOR ¶¶ 27-29.

**B.     Plaintiffs' Claims Are Related To 3M's Manufacture Of MilSpec AFFF.**

These cases also are "for or relating to" acts taken at the direction or guidance of a federal officer. 28 U.S.C. § 1442(a)(1). A lawsuit is "for or relating to" an act under color of federal office if there is "a *connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted). Thus, a defendant "must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *Maryland*, 130 F.4th at 389. Courts "credit Defendants' theory of the case when determining whether there is such a connection or association." *Id*. (internal quotation marks omitted).

3M clearly has satisfied this element here. Plaintiffs' claims in these cases seek recovery for alleged PFAS contamination of their water supply stemming from 3M's manufacture and discharge of PFAS and PFAS-containing products at the Decatur facility. *See Muscle Shoals* Compl. ¶ 19; *Colbert County* Compl. ¶ 21. 3M has alleged (and shown) that it manufactured PFAS-containing MilSpec AFFF at the Decatur facility. *See Muscle Shoals* NOR ¶ 24; *Colbert County* NOR ¶ 24. Plaintiffs do not and cannot contest that. To the contrary, Plaintiffs' RFA responses *admit* that Plaintiffs are seeking to recover "the entire cost of removing PFAS from [their] Drinking Water," even if some of the PFAS "is traceable to the manufacture, sale, disposal, or use of AFFF manufactured by 3M." RFA Resp. No. 52.

Accordingly, under the Fourth Circuit's *Maryland* decision, these cases are plainly "relat[ed] to" AFFF that 3M manufactured at its Decatur facility pursuant to MilSpec requirements for use by the military. 28 U.S.C. § 1442(a)(1). 3M has alleged that PFAS from its manufacture of MilSpec AFFF is commingled with any other PFAS in Plaintiffs' water supply, so at a minimum, the factfinder assessing 3M's liability and defenses will need to address the source of any PFAS

in Plaintiffs' water supply, including the extent to which any PFAS in the water is attributable to 3M's manufacture of MilSpec AFFF at the Decatur facility, and will have to apportion how much of the alleged PFAS contamination derived from MilSpec AFFF. *See* 130 F.4th at 391. As a result, 3M's manufacture of MilSpec AFFF at the Decatur facility is "inextricably related" to Plaintiffs' claims to recover for any PFAS in their water supply, including PFAS traceable to MilSpec AFFF. *Id*. at 392.

Indeed, the JPML transferred these cases to the MDL—along with several other PFAS cases involving the Decatur facility—precisely because they are related to MilSpec AFFF that 3M manufactured at the Decatur facility. *See* JPML Transfer Order 2, ECF No. 5104 (transferring *Cowart*, *Butler*, *Carter*, and *Whitaker* cases because "3M has shown that AFFF was manufactured at its Decatur facility and that these actions therefore will share numerous factual questions with cases pending in the MDL."); JPML Transfer Order 1, ECF No. 5463 (transferring *Antonio* and *Lee* cases based on same evidence of AFFF manufacture at Decatur facility); JPML Transfer Order 1-2, ECF No. 6470 (transferring *Muscle Shoals* and *Colbert County* based on identical evidence).

Plaintiffs argue that these cases do not have a "nexus" with 3M's conduct in *manufacturing* PFAS-containing MilSpec AFFF because Plaintiffs seek to recover for 3M's alleged conduct in *disposing* of PFAS and PFAS-containing products and waste (Motion 14-18)—but that argument relies on a mistaken interpretation of the federal officer removal statute, one that was *superseded* when Congress amended the statute in 2011. Before 2011, § 1442(a)(1) required a lawsuit to be "*for*" conduct under federal office, which required a "*causal* connection between the charged conduct and the asserted official authority." *Sawyer*, 860 F.3d at 258 (quoting *Acker*, 527 U.S. at 431) (emphasis added). In 2011, Congress amended § 1442(a)(1) to allow removal of suits that are "for *or relating to*" conduct under federal office. *See id.* (citing Removal Clarification Act of 2011,

§ 2(b)(1)(A), 125 Stat. 545, 545). The new phrase ("or relating to") "'broaden[ed] the universe of acts' that enable federal officer removal." *Id.* (quoting H.R. Rep. No. 112-17, at 6 (2011)). After 2011, "there need be only a *connection or association* between the act in question and the federal office." *Id.* (internal quotation marks omitted); *see Maryland*, 130 F.4th at 387 n.5; *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (overruling "causal nexus" test).

Regardless of whether Plaintiffs' claims to recover for 3M's alleged disposal of PFAS would have been "for" 3M's manufacture of PFAS-containing MilSpec AFFF under the pre-2011 statute, Plaintiffs' claims are clearly "relating to" 3M's manufacture of MilSpec AFFF under the current version of the statute. Notably, Plaintiffs' Motion cites a string of cases ruling that claims for disposal of product-related waste did not have a "causal nexus" with the defendant's manufacture of the product for the government (Motion 15-16 & n.9)—but, with just one exception, all those cases were decided *before 2011* when Congress amended § 1442(a)(1). In each case (including the case decided after 2011), the courts applied the pre-2011 statute to conclude that the plaintiff's claims lacked a causal connection with the defendant's manufacturing activities. *See, e.g.*, *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 497 (S.D.W. Va. 2009) ("there is no causal nexus between the production activities conducted under government control and the disposal practices controlled by the defendant alone").

After 2011, however, courts applying the *amended* statute have not hesitated to conclude that cases like this one concerning the disposal of allegedly toxic substances are "*relating to*" the defendant's acts under federal authority in manufacturing the substances. 28 U.S.C. § 1442(a)(1) (emphasis added). For instance, in *Illinois ex rel. Raoul v. Monsanto Co.,* 2023 WL 130525, the district court rejected the State of Illinois's argument that the "defendants' polluting conduct does not relate to the federal directives defendants acted under" in manufacturing Agent Orange; the

court explained that Congress had "broadened" the federal officer removal statute in 2011 to include actions "'not just *causally* connected, but alternately connected or associated, with acts under color of federal office.'" *Id*. at *3-4 (quoting *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020)). Similarly, the District Court for the District of New Jersey has *repeatedly* held that lawsuits were properly removed by E.I. du Pont de Nemours & Co. ("DuPont") because the claims to recover for DuPont's alleged disposal of various chemicals at its manufacturing facility were "relating to" DuPont's manufacture of the chemicals for the military. *See Curiale v. A Clemente, Inc.*, 2023 WL 4362722, at *4-5 (D.N.J. July 5, 2023); *Baker v. A. Clemente, Inc.*, 2023 WL 3224586, at *4-6 (D.N.J. May 3, 2023); *Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *5-7 (D.N.J. Mar. 10, 2023); *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*, 2020 WL 2611539, at *4-5 (D.N.J. May 22, 2020); *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*, 2020 WL 2041382, at *2-3 (D.N.J. Apr. 28, 2020). The reasoning of such cases refutes the one post-2011 case in Plaintiffs' string cite—*Rucker v. Monsanto Co.*, 2023 WL 3494716 (S.D. Ill. May 17, 2023)—which improperly relied on a pre-2011 case applying the "causal connection" test, and failed to cite binding appellate precedent holding that the 2011 amendment to the federal officer removal statute had abrogated that test and expanded the scope of the statute. *Compare Rucker*, 2023 WL 3494716, at *2 (citing *Custer v. Cerro Flow Prods. Inc.*, 2009 WL 5033931 (S.D. Ill. Dec. 15, 2009)), *with Baker*, 962 F.3d at 944 ("replac[ing] causation with connection").

Under the current text of § 1442(a)(1), this Court should not hesitate to conclude that Plaintiffs' claims here are "relating to" 3M's manufacture of MilSpec AFFF. Although Plaintiffs cite a number of purportedly contrary Fourth Circuit precedents—*Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), and *Anne Arundel County v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2017)—those decisions are simply irrelevant here. In those cases, local

governments sued oil companies over allegedly deceptive marketing and public-relations practices downplaying and concealing the impact of fossil fuels on climate change. *See Baltimore*, 31 F.4th at 195; *Anne Arundel*, 94 F.4th at 347. The Fourth Circuit held that the lawsuits were not removable under the federal officer removal statute, because the oil companies' conduct in extracting and supplying fossil fuels for the government was not sufficiently related to the deceptive practices that the lawsuits challenged. *See Baltimore*, 31 F.4th at 233-234; *Anne Arundel*, 94 F.4th at 349-350. Here, however, Plaintiffs are not suing 3M over its marketing or public-relations practices. They are suing 3M over its PFAS manufacturing process, including releases from the Decatur facility resulting directly from 3M's manufacture and sale of PFAS and PFAS-containing products. *Baltimore* and *Anne Arundel* do not support Plaintiffs' contention that 3M's disposal of PFAS-related waste at its Decatur facility lacks any connection with 3M's manufacture of the very products that allegedly generated such waste. 3M's conduct in manufacturing PFAS-containing MilSpec AFFF is no less related to the alleged PFAS releases from the Decatur facility than it is to PFAS releases from the use of MilSpec AFFF by third parties—and there is no question that lawsuits alleging PFAS contamination are sufficiently related to 3M's manufacture of MilSpec AFFF when 3M can plausibly allege that such contamination derived from the use of its MilSpec AFFF products. *See Maryland*, 130 F.4th at 388-392. Similarly here, 3M's allegations that the PFAS contamination of Plaintiffs' water supplies derived in part from its manufacture of MilSpec AFFF entitled 3M to remove these cases.

### C.     3M Has Asserted A Colorable Federal Government Contractor Defense.

3M also has pleaded a "*colorable*" government contractor defense. *Sawyer*, 860 F.3d at 255 (emphasis added). "A removing defendant faces a low bar to show that his federal defense is colorable. . . . To be colorable, [the defense] must only be *plausible*." *CaremarkPCS Health*, 140 F.4th at 198 (emphasis added; internal quotation marks omitted). A federal defense thus is

15

colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotation marks omitted). Under the liberal standards applicable to federal officer removal, a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407; *see id.* (the defense need not be "clearly sustainable"); *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) ("Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" (quoting *Willingham*, 395 U.S. at 409)).

3M's notices of removal specifically pleaded each of the required elements of the government contractor defense that the Supreme Court recognized in *Boyle v. United Technologies Corp*. Under *Boyle*, a defendant is not liable for harms related to allegedly defective products "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. Further, "[c]ase law since *Boyle* has expanded the circumstances where a contractor may satisfy the first prong of *Boyle* without the necessity of showing that the government's specifications were 'reasonably precise,'" holding that "a contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *4 (citing cases). 3M's notices of removal pleaded the elements of its defense: 3M alleged that the government approved rigorous specifications for AFFF both in issuing the MilSpec itself and in continuously purchasing and using MilSpec AFFF over decades; 3M alleged that the military placed 3M's MilSpec AFFF products on the military's Qualified Products List based on a determination that

the products conformed to the AFFF MilSpec; and 3M alleged that the government was aware of alleged potential environmental and health hazards of PFAS-containing MilSpec AFFF yet continued to purchase and use the products for decades. *Muscle Shoals* NOR ¶¶ 41-48; *Colbert County* NOR ¶¶ 41-48.

Plaintiffs argue that 3M cannot establish the first *Boyle* element—both because the government did not approve "reasonably precise" specifications for AFFF, and because they contend there is no valid continued-use theory in these cases—but Plaintiffs are wrong on both counts. Plaintiffs confuse the governing legal standard: 3M had to plead only a "*plausible*" defense under *Boyle* to remove these cases, *CaremarkPCS Health*, 140 F.4th at 198 (emphasis added), yet Plaintiffs essentially challenge the *merits* of 3M's defense. The Court cannot evaluate the merits of 3M's government contractor defense at this stage: the purpose of the removal analysis is only to decide whether 3M has plausibly alleged a colorable federal defense, and if so, removal is appropriate. *Willingham*, 395 U.S. at 407. In addition, Plaintiffs are wrong on the substance of their argument: they rely on this Court's order denying 3M and other defendants summary judgment on their government contractor defense, *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357; *see* Motion 9-14, but such reliance is misplaced. To the extent that the Court made any rulings adverse to 3M that relate to the *merits* of 3M's federal defense, those rulings cannot show that 3M failed to plead a *colorable* federal defense sufficient to remove this case. And in any event, the Court's summary judgment order actually *supports* 3M's removal of this case based on its colorable federal defense, because the Court found that 3M's government contractor defense presents triable issues of fact, demonstrating that 3M's defense is necessarily colorable, at a minimum.

### 1. The Court's Prior MDL Rulings Support 3M's Plausible Defense Based On The MilSpec's "Reasonably Precise" Specifications.

This Court *repeatedly* has found that AFFF manufacturers have "a 'colorable' federal defense of government contractor immunity" because they "contend[ed] that [their] AFFF products were manufactured according to the U.S. military's MilSpec specifications, which included specifications for the chemical class that includes PFOS/PFOA," and because they also alleged that they "adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware" by "point[ing] to materials" in which the government "acknowledged . . . concerns with PFOS/PFOA in drinking water." *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3; *see* Order 4, ECF No. 320; Order 4-5, ECF No. 325; Order 4, ECF No. 2559; *accord Nessel v. Chemgaurd, Inc.*, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021) (finding that AFFF manufacturers established a colorable federal defense because "the Government provided specifications for the MilSpec"); *Ayo v. 3M Co.*, 2018 WL 4781145, at *9-15 (E.D.N.Y. Sept. 30, 2018). 3M removed these cases based on substantially similar allegations, and there is no reason for the Court to reach any different conclusion here.

As those orders show, 3M properly removed these cases based on its plausible allegation that the AFFF MilSpec is a "reasonably precise" military specification expressly requiring the use of AFFF (among numerous other requirements on AFFF's physical characteristics, performance, and environmental impact). *See Muscle Shoals* NOR ¶ 35; *Colbert County* NOR ¶ 35.

Plaintiffs point to the Court's summary judgment finding that the MilSpec is "not reasonably precise" under *Boyle* (*In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *8), and argue that that ruling precludes removal here. Motion 9. But the Court's summary judgment finding, based on a different record developed at a different stage in litigation, is not inconsistent with the *plausibility* of 3M's allegation that the MilSpec is "reasonably precise."

Particularly instructive is the approach taken by another MDL court—the court overseeing the *In re 3M Combat Arms Earplug Prods. Liab. Litig.* MDL—which has also had to address how a summary judgment ruling on the government contractor defense impacts subsequent rulings on motions to remand under the federal officer removal statute. In January 2020, that court denied hundreds of motions to remand based on its conclusion that 3M had a "plausible" government contractor defense and therefore properly removed the cases based on federal officer jurisdiction. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 365617, at *5 (N.D. Fla. Jan. 22, 2020). In July 2020, however, the court *granted* summary judgment *for plaintiffs* on 3M's government contractor defense, concluding based on the record that "the government contractor defense is not available" to 3M or other defendants. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 474 F. Supp. 3d 1231, 1257 (N.D. Fla. 2020). Subsequently, the court addressed additional motions to remand. Considering the impact of the court's summary judgment order on those additional motions, the court concluded that, "because the summary judgment standard substantially differs from the plausibility standard for removal, the Court's Summary Judgment Order *does not impact* the Court's analysis in the First Remand Order or its finding that Defendants advanced a colorable federal defense." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5835311, at *2 (N.D. Fla. Oct. 1, 2020); *see id.* ("When considering a motion for summary judgment, the Court examines the record to determine whether there are any genuine disputes of material fact . . . . In contrast, no determination of fact is required at the removal stage. . . . Rather, the Court examines whether the movant has made *plausible* jurisdictional allegation[s] . . . ." (internal quotation marks omitted)). The court thus denied the plaintiffs' motions to remand, ruling that the defendants had met the requirements of the federal officer removal statute "consistent with the First Remand Order." *Id.* at *4; *accord LeBlanc v. Huntington Ingalls Inc.*, 2025 WL 1481961,

at *3 (E.D. La. May 23, 2025) (rejecting plaintiff's argument that the defendant's "asserted federal defenses are not colorable '[i]n light of the many rulings' rejecting them on summary judgment," because "the likelihood of success of [those] defenses under a summary judgment standard is immaterial" when "[t]he standard for removal under § 1442(a) is colorability"); *LeBoeuf v. Huntington Ingalls, Inc.*, 2025 WL 1403139, at *3 (E.D. La. May 15, 2023) (similar).

Similarly here, this Court's summary judgment order does nothing to contradict the Court's previous orders denying remand. Those orders concluded that AFFF manufacturers properly removed cases because they asserted a *colorable* federal government contractor defense based on the AFFF MilSpec's "reasonably precise" specifications, and for the same reason, 3M has shown a colorable government contractor defense in these cases. The Court's summary judgment order was based on a record and a legal standard that do not apply here, and the Court should adhere to its prior orders on motions to remand. The different outcomes at different stages of litigation make perfect sense: a defendant with a plausible federal defense is entitled to have a federal court adjudicate the defense, even though the court ultimately may rule against the defendant or conclude that the defense is unavailable.[4] As the Fourth Circuit has explained, "[n]othing in the federal removal statutes authorizes the remand of a case that has been properly removed under § 1442(a)(1) on the ground that the [defendant's] immunity defense is later rejected"—in such circumstances, a district court has "no right to decline to exercise jurisdiction over the removed action." *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994).

---

[4] That includes the right to a federal appeals court, in the event that 3M were to decide at an appropriate time to challenge the Court's rulings on the availability of 3M's defense on appeal.

### 2. 3M Plausibly Pleaded Its Federal Defense Based On "Continuing Use."

Moreover, when this Court denied 3M's and other AFFF manufacturer defendants' motions for summary judgment on their government contractor defense, the Court did *not* in any way reject 3M's ability to assert its government contractor defense. Far from it: The Court concluded that "there are numerous material factual disputes in this voluminous record that make disposition of the issue of government contractor immunity by summary judgment inappropriate." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *15. The existence of triable issues means that 3M's defense is at least "plausible" (*CaremarkPCS Health*, 140 F.4th at 198), and is neither "immaterial" nor "wholly insubstantial and frivolous" (*Moore*, 25 F.4th at 37). Therefore, 3M is entitled to make "a full factual presentation at trial" of the facts supporting its defense, so that its defense may be resolved "by a final [federal] jury verdict." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357; *see id.* at *12 (holding that "the parties will have the opportunity at trial to litigate, and the jury to decide, these hotly contested issues"); *see also Willingham*, 395 U.S. at 407 ("[o]ne of the primary purposes of the [federal officer] removal statute" is to have federal "defenses litigated in the federal courts").

The Court ruled that 3M's defense raised triable issues of fact *even though* the Court also found, based on "the record before the Court," that "the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *8. 3M respectfully disagrees with the reasonably-precise-specification aspect of the Court's prior ruling, but even Plaintiffs recognize that it does not prevent 3M from asserting its defense. That is because the first *Boyle* element may be established in another way: "[A] contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." 2022 WL 4291357, at *4; *see Ramey v. Martin-*

*Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989) ("even though the military had not developed or approved the specifications for the component at issue, '[t]he length and breadth of the [military's] experience with the component—and its decision to continue using it—amply establish government approval of the alleged design defects.'" (quoting *Dowd v. Textron, Inc.*, 792 F.2d 409, 412 (4th Cir. 1986))).

In these cases, consistent with the Court's summary judgment order, 3M pleaded that same colorable federal defense by alleging not only that the AFFF MilSpec is reasonably precise but also that the government continued to use and purchase 3M's MilSpec AFFF products for decades with knowledge of the alleged risks of PFAS contained in MilSpec AFFF. 3M's notices of removal specifically alleged that the government continued to purchase and use 3M's MilSpec AFFF products after making a discretionary determination to purchase and use the products by weighing their benefits against those risks. *Muscle Shoals* NOR ¶¶ 35, 38; *Colbert County* NOR ¶¶ 35, 38. Those allegations plausibly allege a defense under the continued-use doctrine.

Even though Plaintiffs acknowledge the Court's conclusion that 3M may establish its government contract defense based on the continued-use doctrine, they mistakenly argue that 3M cannot invoke the continued-use doctrine here because the claims in *these* cases arise from PFAS releases from 3M's manufacture of AFFF at the Decatur facility (rather than use of AFFF at military bases or airports). Their argument is that 3M stopped making AFFF in approximately 2001; the government supposedly did not have sufficient knowledge of the alleged potential risks of PFAS until after 3M stopped manufacturing AFFF in approximately 2001; and 3M cannot rely on the government's continued, knowing use of AFFF after 2001 to avoid liability for Plaintiffs' claims relating to PFAS releases from the Decatur facility before 2001. *See* Motion 2-3, 11-14. Plaintiffs' argument fails for two fundamental reasons.

22

*First*, 3M's plausible factual allegations are what matters at this stage—and 3M plausibly alleged that the government had sufficient knowledge of the alleged material risks of PFAS and AFFF even decades before 3M ceased manufacturing AFFF in the early 2000s. Specifically, 3M's notices of removal in these cases alleged that the government knew *as early as 1980* (if not earlier) about the alleged environmental risks of PFAS-containing AFFF. *See Muscle Shoals* NOR ¶ 37; *Colbert County* NOR ¶ 37. 3M also plausibly alleged that notwithstanding that knowledge, the military continued purchasing and using AFFF manufactured by 3M, including AFFF manufactured at the Decatur facility, throughout the 1980s, 1990s, and after. *See, e.g.*, *Muscle Shoals* NOR ¶ 24; *Colbert County* NOR ¶ 24. Although Plaintiffs assert that the "undisputed facts" show that the government did not have sufficient knowledge by 2001 to support 3M's defense in these cases (Motion 13-14), 3M has plausibly alleged otherwise. Plaintiffs seek to have the Court resolve their motions to remand based on findings on the *merits* of 3M's defense, but that is patently improper under the legal standards applicable at the removal stage. 3M was not required to *prove* its defense on the merits to remove these cases. *Willingham*, 395 U.S. at 407 (holding that a defendant "need not win his case before he can have it removed"). 3M needed only to plead a "colorable" defense based on "plausible" allegations. *CaremarkPCS Health*, 140 F.4th at 198. 3M plausibly alleged its defense in these cases based on the continued-use doctrine. Plaintiffs simply ignore the governing legal standards—including that 3M, as the removing defendant here, is entitled to "the benefit of all reasonable inferences from the facts alleged." *Baker*, 962 F.3d at 94.

In any event, Plaintiffs' characterizations of the factual record are incorrect; as the Court is aware, the record is hotly disputed. As relevant here, 3M disputes Plaintiffs' repeated assertion that the government was unaware of the potential risks of PFAS and AFFF before 2000. In fact, 3M disputed that assertion in its summary judgment briefing based on record evidence detailing

the government's knowledge of alleged environmental and health effects of PFAS and AFF dating back to the 1970s.[5] Based on the parties' briefing, this Court concluded that 3M's defense raised triable issues of fact. *In re AFFF Prods. Liab. Litig. Litig.*, 2022 WL 4291357, at *12.

*Second*, the government's continued, knowing use of MilSpec AFFF even *after* 2001 supports 3M's defense in these cases—even assuming that Plaintiffs' claims in these cases are limited to PFAS releases from the time when 3M still manufactured AFFF. The continued-use doctrine recognizes that "a contractor may satisfy the first prong of *Boyle* by showing that the government *continued* to use the product *after* acquiring full knowledge of its defects and risks." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *4 (emphases added). The doctrine looks to the government's conduct *after* it became aware of the risks of the product, whenever that might be. If the government continued to use the product after becoming aware of the risks, the first *Boyle* element is satisfied for all injuries allegedly arising from the product, irrespective of whether the injuries stem from product use before, or after, the time the government became aware of the risks. The continued-use doctrine thus may apply retrospectively. Plaintiffs assert that the government's use of MilSpec AFFF after 2001 is "simply irrelevant to these cases" allegedly relating to PFAS releases from before 2001 (Motion 3), but they cite no legal authority foreclosing 3M's reliance on the continued-use doctrine in these cases based on the government's knowing decision to continue using 3M's MilSpec AFFF in the 2000s and 2010s.

The Second Circuit's decision applying the continued-use doctrine in the *Agent Orange Products Liability Litigation* MDL makes clear that the government's continued, knowing use of military products precludes liability even if plaintiffs' alleged harms from the products preceded

---

[5] *See* Def. Mem. of Law In Support of Mot. For Partial Summ. J. 19-35, ECF No. 1965-1; 3M Mem. of Law In Support of Def. Mot. For Partial Summ. J. 8-17, ECF No. 2347.

the government's knowledge of the alleged product risks. There, the Second Circuit held that "the first *Boyle* requirement is met" because "the government continued to order Agent Orange after having evaluated its toxicity levels and declared them acceptable." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 95 (2d Cir. 2008). The Second Circuit's opinion is specific about when the government evaluated Agent Orange's toxicity levels: "[t]he government examined the toxicity" of Agent Orange at a meeting "[o]n April 26, 1963," where military and other government officials concluded "'that no health hazard is or was involved.'" *Id*. "Thereafter, the government continued to contract to contract with the defendants for purchase of" Agent Orange. *Id*. But exposures to Agent Orange in Vietnam pre-dated April 26, 1963: the government was using Agent Orange in the Vietnam War beginning in "1961." *Id*. at 83 (quoting *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 19 (E.D.N.Y. 2005)); *see In re Agent Orange Prod. Liab. Litig.*, 100 F.R.D. 718, 729 (E.D.N.Y. 1983) (defining *Agent Orange* settlement class to include persons who were service members "at any time from 1961 to 1972"). Yet the Second Circuit's holding applied to plaintiffs generally, regardless of whether some of their exposures occurred in part from 1961-1963 and thus preceded the April 26, 1963 date when the government was found to have continued using Agent Orange with knowledge of its toxicity. The Second Circuit saw no need to parse whether defendants might be liable for any plaintiffs' pre-April 26, 1963 exposures.

Similarly here, the government's continued, knowing use of 3M's MilSpec AFFF products even after 2001 allows 3M to assert a colorable government contractor defense to Plaintiffs' claims related to PFAS releases that plausibly arose in part from 3M's manufacture of MilSpec AFFF before 2001. That outcome makes sense: when the government has exercised its discretion to continue using a product despite the potential risks, a plaintiff seeking to hold the manufacturer liable will necessarily be looking to "second-guess" the government's decision, *regardless* of

whether the claimed injuries arose before or after the government's awareness of the potential risks. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 95 (quoting *Lewis v. Babcock Indus.*, 985 F.2d 83, 89 (2d Cir. 1993)).[6] Such second-guessing of the government's discretionary decisions is precluded by the government contractor defense. *See Boyle*, 487 U.S. at 511-512.

3M thus plausibly alleged a colorable federal government contractor defense based on the continued-use doctrine and properly removed these cases based on federal officer jurisdiction.

## II.     3M Timely Removed These Cases And Never Waived Its Right To Remove Them.

In addition to having properly asserted a basis for removal under 28 U.S.C. § 1442(a)(1), 3M timely removed these cases under 28 U.S.C. § 1446(b). 3M removed these cases less than 30 days after Plaintiffs' RFA responses disclosed for the first time that they seek recovery for PFAS traceable to AFFF, providing a basis for federal officer removal. *See* 28 U.S.C. § 1446(b)(3) (providing that when "the case stated by the initial pleading is not removable," a defendant may remove "within thirty days of after receipt . . . of a copy of an . . . other paper from which it may first be ascertained that the case is one which is or has become removable").[7]

Plaintiffs do not dispute that 3M's removal was timely under § 1446(b)(3). Instead, Plaintiffs argue that 3M *waived* its right to remove these cases, supposedly by defending itself in this litigation in state court during the time *before* Plaintiffs ever served 3M with a pleading or

---

[6] Moreover, regardless of when the government purportedly learned certain information about the alleged risks of a product, if the government nevertheless continued using that product after learning of those risks, that information could not have been material to the government's decision to use the product—at any point in time.

[7] Although Plaintiffs' RFA responses alerted 3M for the first time to the fact that Plaintiffs intended to pursue recovery for the costs of removing PFAS associated with AFFF from their water, those responses still did not provide sufficient facts to establish 3M's basis for removal, which in turn relied on additional facts (as alleged in 3M's notice of removal) relating to 3M's production of *MilSpec* AFFF at the Decatur facility. However, the Court need not decide whether Plaintiffs' RFA responses started 3M's deadline to remove under § 1446(b)(3), as 3M removed both cases within 30 days after receiving Plaintiffs' RFA responses.

paper arguably disclosing a basis for removal. *See* Motion 18-24. Plaintiffs argue that 3M knew that it could have removed these cases before they served their RFA responses (even if 3M was not required to do so), and therefore 3M waived its removal right. *See id.* at 20-21. That argument is fatally flawed. Plaintiffs' argument is inconsistent with the law providing that a defendant is not *required* to remove a case until Plaintiffs' pleadings or other papers trigger one of § 1446(b)'s 30-day removal clocks, regardless of whether the defendant *could* have removed the case before then. And while the Fourth Circuit has held that a defendant "may waive its 30-day right to removal" in "extreme situations" "by demonstrating a clear and unequivocal intent to remain in state court," *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991) (internal quotation marks omitted), the Fourth Circuit has never found waiver based on a defendants' conduct *before* one of the 30-day removal clocks was triggered, as Plaintiffs ask the Court to do here. And other courts have rejected that proposition. The Court should rule that 3M timely removed these cases when it did, and that 3M never waived its right to invoke federal officer removal.

### A.    3M Timely Removed These Cases Under 28 U.S.C. § 1446(b)(3).

Under 28 U.S.C. § 1446, 3M's removal of these cases was unquestionably timely. A defendant's notice of removal is untimely *only* if filed more than 30 days after the defendant receives either an "initial pleading" (§ 1446(b)(1)) or an "other paper" (§ 1446(b)(3)) that discloses a basis for federal jurisdiction. Even when a defendant knows or should know that a case is removable, that does not mean that the defendant must immediately remove the case. Sometimes, "a defendant *may* remove before it *must* do so." *Dietrich*, *v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). Moreover, the Fourth Circuit has interpreted § 1446 to limit the circumstances in which a notice of removal may be untimely.

The Fourth Circuit has held that "a defendant's 30-day removal clock doesn't begin until the basis for removal jurisdiction becomes 'apparent within the four corners of the initial pleading

or subsequent paper.'" *Skidmore*, 1 F.4th at 210 (quoting *Lovern*, 121 F.3d at 162). The Fourth

Circuit, like "[e]very circuit that has addressed the question of removal timing," thus has adopted

a "bright-line rule that limits the court's inquiry to the clock-triggering pleading." *Walker v. Trailer*

*Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (citing *Lovern*, 121 F.3d at 162-163); *accord, e.g.*,

*McLaren v. UPS Store Inc.*, 32 F.4th 232, 236-241 (3d Cir. 2022); *Dietrich*, 14 F.4th at 1093-1095;

*Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285-286 (6th Cir. 2016); *Cutrone v. Mortg.*

*Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014); *Romulus v. CVS Pharmacy*, 770

F.3d 67, 75 (1st Cir. 2014); *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2013).

Under Fourth Circuit law, courts "rely on the face of the initial pleading and on the documents

exchanged in the case by the parties to determine when the defendant had notice of the grounds of

removal." *Lovern*, 121 F.3d at 162; *see Hurley v. CBS Corp.*, 648 F. App'x 299, 304 (4th Cir.

2006) (holding that, because the plaintiffs' complaint did not include any "indicia of removability,"

the defendant "timely filed its notice of removal, within 30 days of receiving the [plaintiffs']

answers to interrogatories, which first indicated the case's removability under federal-officer

jurisdiction"). The Fourth Circuit has declined to "require courts to inquire into the subjective

knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew

what and when." *Lovern*, 121 F.3d at 162. By "focus[ing] on what a defendant receives, and not

on what knowledge it possesses, . . .[t]his approach saves courts from arduous inquiries into

defendants' state of mind." *McLaren*, 32 F.4th at 238 (internal quotation marks omitted).

That means, as the Fourth Circuit has explained, that a defendant is *required* to remove a

case *only* once the plaintiff's pleadings or papers have revealed a basis for removal. *See Lovern*,

121 F.2d at 162 ("[O]nly where an initial pleading reveals a ground for removal will the defendant

be bound to file a notice of removal within 30 days. Where . . . such details are obscured or omitted

. . . , the defendant will have 30 days from the revelation of grounds for removal in an . . . other paper to file its notice of removal"). As a result, if the plaintiff has not triggered one of § 1446(b)'s 30-day clocks, the defendant is not required to remove a case even assuming that the defendant *could* remove the case. Notably, a defendant may be "*permitted* to remove at any time upon discovering, by its *own* investigation, removability," even if the plaintiffs never disclosed the basis for removal. *Atkins v. AT&T Mobility Servs.*, 2019 WL 5190971, at *8 (S.D.W. Va. Oct. 15, 2019) (emphasis added); *see Franklin v. Mfrs. & Traders Tr. Co.*, 2018 WL 3478899, at *4 (S.D.W. Va. July 19, 2018) (§ 1446 "permit[s] a defendant to remove outside the two thirty-day periods on the basis of its own information, provided it has not run afoul of either of the thirty-day deadlines" (quoting *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013))).

Given those settled principles for assessing the timeliness of removal under § 1446(b), 3M's notices of removal were timely. 3M's basis for federal officer removal was that Plaintiffs' claims to recover for PFAS releases from the Decatur facility plausibly arise in part from 3M's manufacture of MilSpec AFFF. *See Muscle Shoals* NOR ¶¶ 1-4; *Colbert County* NOR ¶¶ 1-4. At least before July 19, 2024, it was not "apparent within the four corners" of any pleading or paper from Plaintiffs that these cases relate to MilSpec AFFF. *Lovern*, 121 F.3d at 162. To the contrary, Plaintiffs went out of their way to *avoid* suggesting that these cases have anything to do with AFFF: their complaints and subsequent papers allegedly *disclaimed* AFFF-related relief. *See, e.g.*, *Muscle Shoals* Compl. ¶ 16; *Colbert County* Compl. ¶ 18. Under the Fourth Circuit's bright-line rule, those papers—which "obscured [and] omitted" any basis for removal—did not trigger § 1446(b)'s removal clocks and therefore did not require 3M to remove these cases. *Lovern*, 121 F.3d at 162. *At the earliest*, Plaintiffs disclosed a basis for removal in their July 19, 2024 RFA Responses, in which Plaintiffs for the first time admitted that they seek costs "traceable" to "AFFF

manufactured by 3M." RFA Resp. No. 52. Within 30 days of receiving those RFA Responses, 3M removed these cases, submitting evidence showing—independently of *any* pleading or paper from Plaintiffs—that it had produced MilSpec AFFF at the Decatur facility for the military. *See Muscle Shoals* NOR ¶ 24 & Ex. D; *Colbert County* NOR ¶ 24 & Ex. D. 3M's removal of these cases thus was timely. The amount of time these cases were pending in state court prior to removal is irrelevant.[8]

Plaintiffs insist that 3M previously removed similar PFAS cases involving the Decatur facility within 30 days of receiving the complaints in those cases, so 3M could have removed these cases based on the complaints as well (*see* Motion 20-21 & n.11)—but that also is irrelevant to whether 3M's removal of these cases was timely. Assuming that 3M *could* have removed these cases at some earlier point based on its own evidence from outside the four corners of the complaints showing that it manufactured MilSpec AFFF at the Decatur facility—that does not mean that 3M *had* to remove these cases at that time: "a defendant *may* remove before it *must* do so." *Dietrich*, 14 F.4th at 1094. And because courts should not "inquire into the subjective knowledge of the defendant" to assess the timeliness of removal, *Lovern*, 121 F.3d at 162, 3M was not required to remove these cases any earlier than it did—even assuming that it knew or should have known that these cases were removable—because Plaintiffs' pleadings and papers never disclosed a basis for removal. *See, e.g.*, *Orange Cnty. Water Dist. v. 3M Co.*, 2022 WL 605630, at *1 (9th Cir. Mar. 1, 2022) ("3M's subjective knowledge" is "immaterial to the removal analysis").

---

[8] Although cases "may not be removed . . . on the basis of [diversity] jurisdiction under section 1332 more than 1 year after commencement of the action" (28 U.S.C. § 1446(c)(1)), that time limitation does not apply to cases removed based on federal officer jurisdiction under § 1442.

**B.    3M Did Not Waive Its Right To Remove These Cases.**

3M also did not waive its right to remove these cases. Section 1446(b) does not authorize waiver of a defendant's right to remove. *See Rothner v. City of Chicago*, 879 F.2d 1402, 1415 (7th Cir. 1989). Although the Fourth Circuit has held that "a defendant may yet waive its 30-day right to removal by demonstrating a 'clear and unequivocal intent' to remain in state court," it has also cautioned that "such a waiver should only be found in 'extreme situations'" "'justify[ing] supplementation of statutory rules.'" *Grubb*, 935 F.2d at 59 (quoting *Rothner*, 879 F.2d at 1415).

Plaintiffs argue that 3M's actions in state court waived 3M's right to remove these cases, *see* Motion 21-24, but that argument cannot be reconciled with § 1446(b), which authorizes removal within 30 days of an initial pleading or subsequent paper disclosing a basis for removal. *See Lovern*, 121 F.3d at 162. Plaintiffs do not point to *any* substantial action 3M took in state court *after* their RFA Responses indicated a basis for removal on July 19, 2024 (prompting 3M to remove these cases soon thereafter). Instead, Plaintiffs argue that 3M waived its right to remove these cases simply by litigating them in state court "over the course of two years." Motion 21. But 3M cannot have waived its right to remove these cases even *before* Plaintiffs disclosed a basis for removal.

As courts applying waiver doctrine have observed, "a defendant is not barred from the right to removal in the absence of adequate notice of the right to remove." *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998); *accord Wolfe v. Wal-Mart Corp.*, 133 F. Supp. 2d 889, 892-893 (N.D.W. Va. 2001); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 825 n.5 (E.D. Tex. 1994). Otherwise, the waiver doctrine here would undercut the text of the removal statute itself, which the Fourth Circuit has interpreted to require removal *only* when the basis for removal is "apparent within the four corners" of plaintiffs' pleadings and papers. *Lovern*, 121 F.3d at 162. Thus, when the Fourth Circuit has evaluated waiver of the right to remove, it has considered only the

31

defendants' actions *after* receiving notice from plaintiffs that the cases were removable. *See Redman v. Javitch Block, LLC*, 2022 WL 17716772, at *2 (4th Cir. Dec. 15, 2022) (finding that the defendant waived its right to remove the case by filing a motion to dismiss raising substantive merits arguments "a full two weeks *after* receiving notice that the case is removable" (emphasis added)); *Grubb*, 935 F.2d at 59 (affirming district court's finding that the defendant had not waived its right to remove based on diversity jurisdiction, because the defendant "did not take any substantial affirmative steps in the state court *after* [the non-diverse parties] were dismissed" (emphasis added)).

Moreover, these cases do not present any "extreme" situation justifying waiver. *Grubb*, 935 F.2d at 59. Plaintiffs argue only that, before they disclosed a basis for removal, 3M litigated these cases in state court by filing motions to dismiss for lack of subject-matter jurisdiction in the particular Alabama state trial court where Plaintiffs had filed their claims; seeking appellate review of the orders denying those motions; and then engaging in fact discovery. *See id.* at 21-22. Courts have found that similar conduct did not show a "clear intent" to remain in state court because it was not "'substantial defensive action'" "seeking a final determination on the merits of the case in state court." *Sayre Enters. v. Allstate Ins. Co.*, 448 F. Supp. 2d 733, 735 (E.D. Va. 2006) (quoting *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998)); *see id.* at 736 (ruling that the defendant's state-court litigation including filing of demurrer and participating in discovery was not an "extreme" situation justifying waiver). And although Plaintiffs suggest that 3M removed these cases to delay an upcoming trial (*see* Motion 22), Plaintiffs mischaracterize the status of the state-court proceedings: at the time of removal, fact discovery was ongoing, expert discovery had not started, and Defendants had *opposed* Plaintiffs' motion for a trial setting in 2025.[9]

---

[9] *See Muscle Shoals*, No. 2:24-cv-07479, ECF No. 1-37, at 667.

Waiver is particularly inappropriate here because Plaintiffs have consistently tried to *obfuscate* any basis for removing these cases. At least until Plaintiffs admitted in their RFA Responses that they were seeking the entire costs of addressing alleged PFAS contamination that is traceable at least in part to AFFF, Plaintiffs never disclosed that they were seeking AFFF-related relief: to the contrary, Plaintiffs have engaged in a shell game by purporting to *disclaim* recovery for AFFF—and by attempting to rely on those disclaimers to avoid removal to federal court and transfer to this MDL—even while implicitly seeking recovery for *any* PFAS in their water supply regardless of whether it is from an AFFF or a non-AFFF source. Courts have found that defendants "did not waive their ability to remove" when plaintiffs "obscured the factual basis for removal." *Frey v. Minter*, 829 F. App'x 432, 437 (11th Cir. 2020); *accord Apostolic Pentecostal Church of Panama City Inc. v. Scottsdale Ins. Co.*, 2021 WL 4147014, at *2-3 (N.D. Fla. Mar. 25, 2021). Here too, waiver is inappropriate because Plaintiffs sought to obscure any basis for removal.

Plaintiffs' obfuscation undermines its waiver argument for another reason. As numerous circuits have held, Plaintiffs who are concerned about late removals or so-called "'gamesmanship'" are "'in a position to protect themselves'" by disclosing a paper that makes removal clearly ascertainable—thereby triggering the 30-day clock for removal. *McLaren*, 32 F.4th at 240 (quoting *Romulus*, 770 F.3d at 76); *see Graiser*, 819 F.3d at 286; *Cutrone*, 749 F.3d at 147; *Roth*, 720 F.3d at 1126. Arguments about a defendant's "delay" cannot overcome "the plain text of the statute," which puts the onus on a plaintiff to "start the removal clock." *McLaren*, 32 F.4th at 240.

Plaintiffs rely on two Fourth Circuit decisions affirming orders remanding cases on the basis that the defendants waived their right of removal— *Northrop Grumman Tech. Serv., Inc. v. DynCorp Int'l LLC*, 865 F.3d 186 (4th Cir. 2017), and *City of Martinsville, Va. v. Express Scripts,*

*Inc.*, 2025 WL 1039624 (4th Cir. Apr. 8, 2025)—but those cases are easily distinguishable from the circumstances here. Neither compels a finding that 3M waived its right to remove these cases.

In *Northrop Grumman*, the Fourth Circuit held that the notice of removal was *untimely under § 1446(b)(3)*, and that Northrop Grumman (the plaintiff and counter-claim defendant) had waived its right to remove the cases by engaging in state-court litigation for months *after* § 1446(b)(3)'s 30-day clock had expired. *See* 865 F.3d at 187-88. Specifically, the Fourth Circuit concluded that Northrop Grumman's alleged basis for federal officer removal was apparent from the amended counterclaims filed against it filed in November 2015, but Northrop Grumman did not remove the case until six months later, in May 2016, thereby rendering the notice of removal untimely. *Id*. The Fourth Circuit further held that Northrop Grumman had waived its right to remove the case because—in the months after the counterclaims were filed but before the case was removed—it "sought multiple, substantive rulings from the state court" on the counterclaims, including a motion for summary judgment and jury-trial request. *Id*. at 188. *Northrop Grumman* is thus inapplicable to the cases here. Plaintiffs do not even argue that 3M's notices of removal were untimely under § 1446(b)(3), and they do not identify any significant action 3M took *after* their RFA Responses triggered § 1446(b)(3)'s 30-day deadline whereby 3M purportedly waived its right to remove. Indeed, Plaintiffs do not identify *any* action that 3M took at *any* time seeking a substantive ruling from the state court: 3M never filed a motion for summary judgment, and 3M in fact opposed Plaintiffs' motion for a trial setting. *Northrop Grumman* provides no support at all for Plaintiffs' waiver argument.

The Fourth Circuit's non-binding, per curiam decision in *City of Martinsville* likewise provides no support for Plaintiffs' waiver argument. Plaintiffs rely on the fact that the Fourth Circuit, in affirming the district court's ruling that the defendant had waived its right to remove,

did not reach the district court's alternative ruling that the defendant's removal was untimely. Motion 20. However, the Fourth Circuit clearly explained that it was affirming the district court's ruling that "'even *after* the right to remove was clear,' the removing defendants 'took affirmative action to continue to litigate in state court.'" *City of Martinsville*, 2025 WL 1039624, at *1 (emphasis added). The circumstances here are different because, again, Plaintiffs do not identify any substantial action 3M took in state court after their RFA Responses clearly disclosed a basis for removal. Moreover, Fourth Circuit also noted that the parties in *City of Martinsville* had agreed to a "joint stipulation" entered in state court in which the parties agreed that the plaintiffs would "never seek to impose liability of any kind" on the defendants for their federal work, and the parties expressly recited "the defendants' intention to remove absent entry of the stipulation." *City of Martinsville, Va. v. Purdue Pharma, L.P.*, 2024 WL 42198847, at *4 (W.D. Va. Sept. 16, 2024). The district court found that "[b]y asking the court to enter that stipulation as an order and by continuing to litigate, [the defendants] evinced an intent to remain in state court" and thus "waived their right to remove by continuing to participate in the state-court proceedings" subsequently. *Id.* at *12-13. Here, by contrast, 3M never extracted any such concession from Plaintiffs narrowing the scope of their claims in exchange for abandoning a threat to remove these cases. Nor does any other such "extreme" situation justify waiver here. *Grubb*, 935 F.2d at 59.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to remand.

35

Dated: August 8, 2025

Respectfully submitted,

s/ Brian C. Duffy
Brian C. Duffy (Fed ID No. 9491)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
(843) 720-2044
(843) 720-2047
bduffy@duffyandyoung.com

Daniel L. Ring, Esq.
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2625
dring@jenner.com

*Counsel for Defendant 3M Company*